## Markovitz, Exrx., Appellant, *v.* Markovitz Brothers, Inc., et al.

Argued January 9, 1935. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*William E. Mikell, Jr.,* of *Saul, Ewing, Remick & Saul,* for appellant.

*Morris Wolf,* of *Wolf, Block, Schorr & Solis-Cohen,* for Harry Markovitz and Markovitz Brothers, Inc., appellees.

*Russell Conwell Cooney,* of *Lynd & Cooney,* for Estate of David Markovitz, deceased, appellee.

OPINION BY MR. JUSTICE LINN, March 25, 1935:

Plaintiff sues to procure dissolution of a corporation. The bill was dismissed. Her claim is based on a contract dated December 23, 1924, made by four Markovitz brothers, David, Max, Bernath and Harry. They had been trading for some years as Markovitz Brothers and, in July, 1924, organized a corporation, Markovitz Brothers, Incorporated, to succeed the partnership. Before making the transfer, they executed the contract in suit for the purpose of showing agreement, as they stated, "upon certain fundamental matters in the management of said corporation, and in the matter of their holdings of stock therein." The corporation took over the business in January, 1925, the brothers having unequal shareholdings as provided by the eighth paragraph of the agreement.

The agreement prohibited the sale by any party of his common stock without the written consent of all the others; required each to vote his stock for the others as

directors at every election and also for a fifth director nominated by a majority of the parties; it required each party, as a director, to vote for every other party to a specified office and at a specified salary; it prohibited each, while an officer, from engaging in any other mercantile business. The next, or 6th, paragraph began, "In case any of the parties hereto shall desire to withdraw from the business and dispose of his stock," the book value shall be ascertained and "the remaining three parties hereto shall, upon the written direction of any two of the remaining parties, purchase all of the said stock of the withdrawing party. . . ." If the remaining parties elect not to purchase, "the withdrawing partner" may dispose of his stock as he pleases. Obviously, the word "any," in the first part of the paragraph, was used in the sense of "one."

It is the next, or 7th, paragraph of the contract on which plaintiff particularly relies for specific performance. "SEVENTH: In case any of the parties hereto shall die, the value of his stock shall be ascertained . . . [as specified] . . . the surviving partners shall purchase all of the said stock of the deceased party . . . giving . . . the purchasers' four joint promissory notes. . . . If the surviving partners shall fail to execute and deliver the notes for the purchase of the stock . . . within three months from the date of the death of the decedent, then the Directors shall and will call a Special Meeting of the Stockholders of the Company, and shall vote all their stock at such special meeting to dissolve the Corporation; pay its debts and entirely liquidate its assets, and apportion the proceeds amongst its stockholders. Immediately after the stockholders vote on the question the Board of Directors shall meet and proceed to said liquidation."

In July, 1927, Bernath died and the three remaining parties purchased the Bernath stock as provided for in paragraph seven. In 1929, Max, plaintiff's testator, died. In 1930, plaintiff, as executrix, demanded of David that

the two surviving brothers should also buy her husband's shares pursuant to paragraph seven. They refused. Later, in 1930, David died. In 1932, plaintiff demanded that the survivor, Harry, and the executrix of David buy the stock, or by proper action dissolve the corporation. The learned chancellor found that, at the time of the hearing, the corporation had accounts receivable amounting to $260,000 and that, if the corporation were liquidated, there would be a loss in collection of 50% to 60%. He also found that the inventory was approximately $200,000 cost value and that, if liquidated, there would be a loss of half that amount and that "the liquidation would result in considerable loss to the stockholders."

The plaintiff seeks extraordinary relief and must clearly make out the right on which she relies, in order to be entitled to specific performance (Beaver v. Slane, 271 Pa. 317, 114 A. 509; Marshall v. MacGregor, 314 Pa. 454, 171 A. 598). It must also appear that the relief desired is not inequitable (Henderson v. Hay, 2 Watts 148; Rupniewski v. Miazga, 299 Pa. 190, 149 A. 193).

The question now is whether, after the purchase by the three survivors of the first decedent's stock, the obligation to purchase was fully performed and terminated, or whether it survived and requires the last survivor to buy all the stock or to dissolve the corporation with the resulting loss stated by the learned chancellor.

Appellant contends that the obligation continued; this depends on the meaning of the seventh paragraph. Appellant contends that the word "any" in the opening words of that paragraph—"In case any of the parties hereto shall die"—means "one or more," and that the paragraph applies to the first three parties to die. The rest of the agreement gives no support to this construction. Almost the same words are used in the opening of paragraph six—"In case any of the parties hereto shall desire to withdraw"—and it clearly appears from the use of the words "the remaining three parties" further on in the section, that "any" in this paragraph means "one."

Presumably, "any" in paragraph seven has the same meaning, and this is confirmed by other words in the text of paragraph seven—"surviving partners," "purchasers," and "joint promissory notes"—which indicate a plurality of survivors and would be inappropriate, if the provision had been intended to apply to the survival of only one of the parties.

The general purpose of the agreement appears to have been to regulate the rights of the parties, so long as all were living and interested in the corporation, and to provide what should happen on the first death or first withdrawal, in order to preserve some of the features of their former partnership while gaining corporate nonliability. (See Partnership Act of March 26, 1915, P. L. 18, sections 38, 41 and 42; 59 P. S., sections 100, 103 and 104; cf. Schuster v. Largman, 308 Pa. 520, 162 A. 305.) The second, third, fourth and eighth paragraphs, referred to above, could only apply so long as all four of the brothers remained alive and interested in the corporation. The first, fifth and ninth paragraphs are general and do not point either way. The sixth paragraph cannot apply after the death or withdrawal of any one partner. With the scope of the contract thus limited by the foregoing provisions, there is no reason to suppose that paragraph seven was intended to continue in force for a longer time. If their purpose was to provide what should be done beyond the death or withdrawal of one party, they have not said so; for that, it would be necessary to supplement section seven with new contracts applicable to the changed conditions.

Decree affirmed at appellant's costs.