## Solis, Appellant, *v.* Harr, Secretary of Banking.

Argued December 4, 1936. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*James F. Mersereau,* with him *John C. Noonan,* for
appellant.

*Joseph S. Clark, Jr., Gerald F. Flood,* Special Dep-
uty Attorney General, *Willis Daniels,* Deputy Attorney
General, and *Charles J. Margiotti,* Attorney General,
for appellee, were not heard.

OPINION BY MR. JUSTICE STERN, January 11, 1937:
At the trial of this case to recover the amount of com-
mission alleged to have been promised plaintiff for serv-

ices in procuring a prospective purchaser of a mortgage, binding instructions were given for defendant, and this court, on appeal, must therefore consider only the testimony favorable to plaintiff. Reviewing the record in that limited manner, the judgment of the court below must nevertheless be affirmed. In this, as in every action brought upon a contract, recovery can be had only upon showing that the agreement sued upon was made by defendant, or by his duly authorized agent, or that defendant ratified it. Plaintiff's case fails to meet this vital requirement.

There is some confusion of thought manifested throughout the record which is hardly justified by complexity of facts or uncertainty of law. The essential factors in the controversy are clear and simple.

Defendant, Secretary of Banking, took possession of Olney Bank & Trust Company, and among its assets was a mortgage secured upon the Midway Theatre Building in Philadelphia. Originally it was in the sum of $400,000 but it was reduced by agreement to $175,000. Plaintiff, a real estate broker, was invited by one Henry Benner to find a purchaser for this mortgage, the price to be the amount of the reduced principal together with accrued interest; the plaintiff was to be paid a commission of 5% on $175,000, or $8,775. Benner was one of the members of an advisory committee appointed by defendant, whose function was to study the assets of the bank and make recommendations in regard to their liquidation. Other members were Louis S. Neidig, Jr., William M. McKee and John J. Herd, all of whom participated more or less in the arrangement made with plaintiff. Plaintiff apparently concedes, however, as he must, that they had no authority, collectively or individually, to make any commitment binding upon defendant. While Neidig was also one of the deputy receivers of the bank, his certificate of authority was limited to the execution of certain documents, and did not grant any discretion or power in regard to the sale of assets.

Powers of attorney are strictly construed, and special powers not enlarged unless clearly so intended: *Gross v. Kincaid,* 83 Pa. Superior Ct. 514; *Mott v. Kaldes,* 288 Pa. 264, 270; *Culbertson, Receiver, v. Cook,* 308 Pa. 557, 562. The only deputy receiver who was invested with the broad powers of defendant himself was W. A. Welsh, but he took no part in the transaction.

Plaintiff obtained from Warner Bros. Theatres, Inc. (Pa.), an offer to purchase the mortgage on the terms stipulated by Benner, and a check for $10,000 was deposited on account. A receipt for this money, outlining the terms of the proposed transaction and signed by Neidig in the name of defendant, was given to the Warner company. It was stipulated therein that the offer was subject to defendant's approval, the deposit to be returned if the offer was not accepted. There was a clause that "If this offer is accepted the Secretary of Banking will be required to pay Mendes Solis a commission of $8,775.00 when this sale is consummated, and settlement completed by Warner Bros. Theatres, Inc. (Pa.)." This receipt, although the subject of considerable controversy at the trial, adds nothing of importance to the rights and liabilities of the parties. Plaintiff does not admit that it correctly expresses his agreement with Benner, or that the commission was to be paid to him only if the sale was consummated and settlement completed,[1] and since in any event he was not a party to the receipt he obviously was not legally bound by its terms. Moreover, even if concluded thereby, he could not have been deprived of his commission by defendant, acting arbitrarily and in bad faith, refusing to consummate the transaction and effect the settlement; the commission would have been earned when the purchaser was

---

[1] Plaintiff testified that he understood that "unless the deal was consummated" he was not to receive any commission, but he made it plain that by the "consummation of the deal" he meant merely the obtaining of the offer from the Warner company.

procured, and the fact that defendant rejected the Warner offer and returned the deposit would have been immaterial as far as plaintiff's rights were concerned. The real difficulty with plaintiff's case is in the lack of proof of any contractual relationship whatever between him and defendant.

Plaintiff did produce testimony that the transaction was approved by William Lewis McGee, who was a deputy appointed by defendant "to act as my Special Investigator in the supervision of the duties of the Special Deputies as Agents in charge of the banks in possession." There was no evidence that McGee had any power to give such approval on behalf of defendant. He himself testified that he was allowed to act for defendant in routine matters, but that in a transaction of the magnitude of the sale of the Midway Theatre mortgage he had no authority. Plaintiff points out that it was McGee who executed the affidavit of defense filed in the present suit, and in various paragraphs thereof it is stated that the agreements in regard to the sale of the mortgage and the payment of the commission were "subject to the approval" and "wholly within the authority" of "the said Secretary of Banking, or the deponent acting for the said Secretary of Banking." This, it is argued, constitutes an admission that McGee had the necessary authority to act for defendant. The court below, however, was right in rejecting this contention. The phrase in question obviously refers to McGee's authority *when* acting for defendant, and was not intended as an averment that he had the same power in such matters as defendant himself. In the supplemental answer to the 18th paragraph of the amended statement of claim it is expressly denied that McGee had been authorized by defendant to approve sales of bonds and mortgages, and the certificate of his appointment neither expressly nor impliedly grants any such authority.

Plaintiff urges that there was evidence indicating that defendant himself ratified the transaction, but a

careful reading of the testimony indicates that this argument is without foundation. There was some hearsay evidence to that effect properly stricken out at the trial; otherwise it appears merely that defendant stated he thought the proposed sale of the mortgage would be beneficial to the interests of the bank; at the same time, however, he definitely refused to give his official assent.

There is a question pertinent to this proceeding which, though not raised by appellee, requires comment. The sale of the mortgage would not have required judicial approval: Act of May 15, 1933, P. L. 565, sec. 721 C. But it is provided by section 1006 of that act[2] that "any expense incurred in the . . . liquidation . . . of the assets . . . of the institution, and any compensation paid to . . . any . . . person employed to assist the secretary in such . . . liquidation . . . shall be paid out of the assets of the institution, provided it is included in any partial or final account filed by the secretary, . . . and is approved by the court in which such account is filed." This section apparently implies that a claim for a commission for the sale of an asset should be presented at the audit of the receiver's account rather than prosecuted by suit. But even if an independent action be maintainable, it would seem clear that any agreement by the Secretary of Banking, as receiver, to pay such a commission requires the approval of the court in which the receivership proceedings are pending before any judgment conclusive between the parties can be recovered.

Judgment affirmed.

---

[2] A somewhat similar requirement was contained in sec. 49 of the Act of June 15, 1923, P. L. 809.