Markovitz et al. *v.* Markovitz et al., Appellants.

Argued January 25, 1939.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Morris Wolf*, of *Wolf, Block, Schorr & Solis-Cohen*, with him, *Russell Conwell Cooney*, for appellants.

*Harry Shapiro*, for appellees.

OPINION BY MR. JUSTICE BARNES, July 3, 1939:

The plaintiffs as minority shareholders in Markovitz Brothers, Inc., instituted this proceeding to recover for the benefit of the corporation from its president and treasurer the sum of $6,100, which is alleged to have been wrongfully diverted from the corporation's treasury. The defendants assert that the money was used to pay what was in reality a debt of the corporation. The bill averred that the officers of the company refused to bring suit on its behalf to compel restitution of the amount claimed to have been misapplied, whereupon this action by plaintiff shareholders was commenced.

The facts pertinent to the present question appear from the record as follows: Markovitz Brothers, Inc., was incorporated under the laws of this state on July 25, 1924, and is engaged in a jobbing business in dry goods and similar merchandise at No. 321 Market Street, in the city of Philadelphia. The corporation has enjoyed a profitable business. It succeeded to a long established partnership, consisting of four brothers, David, Max, Harry and Bernath Markovitz, the larger interest in the firm being owned by David and Max, the older brothers. After the company was incorporated the assets of the partnership were transferred to the new company in exchange for its shares of stock. The older brothers were the majority stockholders, and respectively the president and treasurer of the company.

The transaction giving rise to this litigation occurred in 1925, shortly after the corporation was formed, when

David and Max Markovitz were asked to give the company's endorsement upon notes aggregating $10,000 of Gelb & Mayer, a partnership operating dry goods and clothing stores in Tamaqua, Bloomsburg and Shamokin. This firm was seeking a loan at the First National Bank of Tamaqua. As it was a valued customer and indebted to the corporation to the extent of approximately $30,000 it was agreed by David and Max Markovitz that they would personally endorse the notes, but they were unwilling to sign them in the name of the corporation.

The bank agreed to accept the individual endorsements, and on February 15, 1925, Max Markovitz signed two notes of Gelb & Mayer, totaling $9,500, and the proceeds were paid to that firm. Although it appears from the testimony that the notes were to have the signatures of both brothers, they were executed by Max alone, as David was absent at the time. When they were renewed at maturity David Markovitz signed them as co-maker rather than as endorser, apparently to obviate the necessity of executing renewal notes each time they matured. It clearly appears from the testimony, and the court below found, that "there was no consideration for the promise [to endorse] and neither Max nor David expected to receive or did receive any consideration for the same, other than such advantage or benefit as was derived by the corporation."

From time to time payments were made by Gelb & Mayer to the bank until the principal sum of the notes was reduced to $6,100. During this period of approximately five years the deaths of three Markovitz brothers occurred. The first to die was Bernath whose shares were acquired by his three surviving brothers; thereafter Max Markovitz died, and his shares passed to his widow, Regina M. and his sons, Victor and Jerome Markovitz. They are the plaintiffs in the present action. David Markovitz died on October 8, 1930, and his interest in the corporation is held by his widow and children. One of these is Sidney J. Markovitz, a defendant

in the present proceeding. The survivor of the four brothers is the remaining defendant, Harry Markovitz.

The bank presented against the estate of David Markovitz its claim upon the two renewal notes which he had signed as co-maker. It appears that the estate was insolvent, and exceptions were filed by the bank to the account of the executors upon the ground that the shares of stock owned by him in Markovitz Brothers, Inc. had been sold to his daughter, Leah M. Tetelman, in fraud of the creditors of his estate. While these proceedings were pending, in July, 1934, the defendants, as officers of the company, paid to the bank from the corporation's funds the balance due upon the notes, with interest. The amount so paid was charged off upon the books of the company as a bad debt. This action was taken without consulting the plaintiffs as shareholders of the corporation. The claim of the bank against the estate of David Markovitz was then withdrawn. After a hearing upon bill and answer the Chancellor decided that the payment to the bank was an unauthorized and ultra vires use of the corporation's funds, and entered an order directing the defendants to refund to the company the amount so disbursed, together with interest, and also to pay plaintiffs' counsel fee. Exceptions of the defendants to the order of the court were dismissed by the court in banc, from which defendants have taken this appeal.

In the present case it is of primary importance that there are no rights of creditors involved since it is conceded that the corporation has at all times been a solvent and going concern; there are no non-assenting shareholders who are strangers to the transaction involving the notes. In either case the equities of such third parties would of necessity require first consideration. With the exception of the defendant, Harry Markovitz, who as president directed the payment of the notes by the corporation, all the parties to the present controversy are successors in title to the two shareholders who ac-

tively participated in the original endorsement and renewal of the notes. As we have seen, the notes originally endorsed by Max Markovitz were renewed by notes which David Markovitz signed as co-maker. These acts were done with the full knowledge and approval of both these shareholders, so that neither one of them could have objected to the discharge of the obligation so incurred by the use of funds belonging to the company. The complaining shareholders are the widow and sons of Max Markovitz, who, as present owners of the shares received upon his death, are attempting here to set up rights which he, if living, would have been precluded from asserting.

As was aptly observed by the Chancellor in his adjudication, "this litigation is in reality a family quarrel."* The question is whether we should close our eyes to the equities existing between the parties, or do substantial justice by disregarding, so far as the transaction in dispute is concerned, the technical requirements which are ordinarily followed in the performance of acts by a corporation.

In a case such as the present, where it is necessary in order to meet the ends of justice, a court of equity will not hesitate to treat the corporation and the individual or individuals owning its shares as identical. As Mr. Chief Justice KEPHART said in *Tucker v. Binenstock,* 310 Pa. 254 (p. 263) : "The fiction of a corporation as an entity distinct from the aggregate of individuals comprising it was designed to serve convenience and justice. There is consequently an exception recognized wherever the rule is known, namely, that the fiction will be disregarded and the individuals and corporation considered as identical whenever justice or public policy demand it and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless." We have said that "a court of equity does not

---

* See *Markovitz v. Markovitz Brothers, Inc.,* 318 Pa. 58.

take a skin-deep view of a situation like that here presented. It looks to the substance of the transaction, not to its mere form or color, . . . and sees things as ordinary men do . . .": *Kendall v. Klapperthal Co.*, 202 Pa. 596, 607. Again we said ". . . equity, which penetrates through forms to realities, will regard plaintiff and the corporation as so far identical as to recognize him as the true party in interest"; *Waring v. WDAS Broadcasting Station, Inc.*, 327 Pa. 433, 442. See also *Stony Brook Lumber Co. v. Blackman*, 286 Pa. 305, 309; *Warburton v. John Wanamaker Phila.*, 329 Pa. 5.

We are of opinion that the court below adopted a too restricted view of the situation here presented. While it conceded that if the parties had been operating as partners there would have been no question concerning the right of defendants to disburse the company's money in payment of the Gelb & Mayer notes, it decided that a different result must be reached because their relation was that of shareholders in a corporation, and consequently formal action by directors and shareholders was a sine qua non of defendants' authority to make such use of the funds of the corporation.

The circumstances here do not require us to reach what would be such an obviously inequitable result as to place upon the estate of one shareholder the entire burden of an obligation undertaken originally for the benefit of the corporation. We have no hesitation in reaching the conclusion that the obligation was incurred in the interest of the corporation,—the record establishes that fact. Therefore it follows that as all of the present shareholders of the corporation, or their predecessors in interest, both assented and participated in signing the notes, or in discharging the balance due thereon with company funds, the complaining shareholders have no standing to challenge the payment made by the corporation.

It seems to us that the principle here involved is analogous to the question that was raised in *Buse & Caldwell Dissolution Case,* 328 Pa. 211. In that case there were but two shareholders in a corporation, one of whom undertook individually an obligation to protect the company from loss upon a business investment. The debt was subsequently paid by the estate of the shareholder who had incurred the liability. We held that the other shareholder, who had assented to the transaction, could not object to a reimbursement to the estate from the assets of the corporation. Mr. Justice LINN, speaking for the Court, said (p. 218) : "Mr. Caldwell thinks Buse's estate should take the loss, which might be a sound position if he had not assented to what Buse did. We have concluded that the record shows that Buse's acts to save or bring back the Modernola Company were done by him in an effort to save something on Buse & Caldwell's investment in 300 shares of the Modernola stock." See also *Oliver v. Safe Dep. & Title Guar. Co.,* 315 Pa. 552; *Bonini v. Family Theatre Corp.,* 327 Pa. 273.

We have carefully considered all the contentions advanced on behalf of the plaintiffs, and are convinced for the reasons stated above that they are not entitled to the relief sought by the bill.

The decree of the court below is reversed. It is ordered that the bill be dismissed. Costs to be paid by appellees.