Markovitz et al., Appellants, *v.* Markovitz et al.

Argued April 17, 1939. Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*Harry Shapiro*, for appellant.

*Morris Wolf*, of *Wolf, Block, Schorr & Solis-Cohen*, for appellees.

OPINION BY MR. JUSTICE BARNES, July 3, 1939:

In this proceeding the plaintiff as executrix of the Estate of Max Markovitz, deceased, with her two sons as co-plaintiffs, seeks to compel specific performance of an alleged oral agreement which it is claimed was made on or about December 15, 1930 between various share-

holders of Markovitz Brothers, Inc., concerning the management of the corporation. The defendants here are all the remaining shareholders of the corporation.[1]

The controversies between the parties, which had their origin in a family quarrel, have been before this Court in recent cases,[2] so that it is not necessary to repeat in detail the facts there stated as to the incorporation on July 25, 1924, of a dry goods business, which the four brothers, David, Max, Bernath and Harry Markovitz, had conducted as partners for many years, in the city of Philadelphia. Three of the brothers are now deceased, having died within the years 1927 to 1930. Harry Markovitz is the surviving brother. While the two older brothers David and Max Markovitz lived, the business of the corporation, like that of the partnership, was successfully carried on, and there was no discord, but following their deaths irreconcilable differences arose between their respective families, who had inherited their shares in the corporation. The disputed questions related to various financial transactions concerning the

[1] The following shows the relationship of the parties to the litigation:

(1) Bernath Markovitz died upon July 7, 1927. His shares in the corporation were acquired by his three surviving brothers, David, Max and Harry Markovitz, in equal proportions.

(2) Max Markovitz died upon July 12, 1929. His widow and the surviving executrix under his will is the plaintiff Regina Markovitz. He left two sons, Victor S. and Jerome L. Markovitz, who are here co-plaintiffs.

(3) David Markovitz died upon October 6, 1930. His widow, Nellie Markovitz, his son Sydney J. Markovitz, Max L. Friedman and the Central Trust and Savings Company, were appointed and qualified as the executors under his will. In addition to his widow, he was survived by four children: Sydney J. Markovitz, Leah M. Tetelman, Evelyn M. Gartman and Ruth M. Fisher. All these parties are defendants in the proceeding.

(4) Harry Markovitz is the surviving brother.

[2] *Markovitz, Exrx., v. Markovitz Bros., Inc.,* 318 Pa. 58; *Markovitz v. Markovitz,* 336 Pa. 122; *Markovitz v. Markovitz Brothers, Inc.,* 336 Pa. 129.

corporation which had taken place while the brothers lived, and which ultimately became the subject of litigation.

The present proceeding, however, grows out of an informal meeting of several shareholders which was held shortly prior to December 15, 1930. This was after the death of David Markovitz in October of that year, while an effort was being made to find a working basis for conducting the affairs of the corporation, following the decease of its president. It was at this meeting that the alleged oral agreement was made, while the three plaintiffs were present representing the estate of Max Markovitz. There were also present Sydney Markovitz and Max L. Friedman, on behalf of the estate of David Markovitz. However, neither Nellie Markovitz nor a representative from the Central Trust and Savings Company, co-executors of this estate, were in attendance. Harry Markovitz was not present so far as the record shows.

The terms of the alleged agreement were to the effect that the business of the corporation should be continued by the Board of Directors under a plan of gradual liquidation to the extent of $50,000 for the first year; that during the continuance of the business the approval and affirmative vote of four of the five directors of the company should be necessary to determine the general policy of the company, the election, the removal, and the fixing of the salary of any officer thereof.

On December 15, 1930, at a meeting of the shareholders, the following amendment to the by-laws was adopted: "The Board of Directors shall have the power to elect the officers of the corporation, remove any officer of the corporation, to fix the salary of all officers of the corporation; to determine the general policies of the business of the corporation, provided that no such action as provided in this section shall be taken by the Board of Directors unless at least four directors vote in favor of such action. And, further, that no funds of the

corporation shall be loaned to any stockholder or any other person, without the vote of at least four directors of the corporation." Plaintiffs contend that this by-law was enacted in furtherance of the oral agreement which the stockholders made at their first meeting, in December, 1930.

Subsequently, at a duly convened meeting of the shareholders held March 16, 1933, the amendment to the by-laws adopted in December, 1930, was repealed by a majority vote, over the objection of plaintiffs as minority shareholders, whose shares were voted against the repeal.[3] This action was based upon Article XI of the by-laws of the company, which gives to the stockholders the right to amend them as follows: "These by-laws may be altered, amended, modified, or added to by the vote of the stockholders owning a majority of the stock of the company and present in person or by proxy at any general or special meeting of the stockholders of the company."

The present bill was filed on September 11, 1935, approximately two and one-half years after the meeting at which the repeal of the by-law was passed. It seeks specific performance of the alleged oral agreement and the by-law adopted on December 15, 1930, as valid and binding upon all the parties; it asks that the repeal of the by-law be set aside, and that all acts of the Board of Directors taken after that time be declared of no effect.

The principal contention of the plaintiffs is that the oral agreement and the provisions of the by-law constituted an irrevocable contract among the shareholders which was to remain in force so long as the business

---

[3] The Estate of David Markovitz owned 43⅓ shares of the common or voting stock of the company; the Estate of Max Markovitz owned 35% shares, while Harry Markovitz owned 20% shares, a total of 100 shares of outstanding common stock. There were voted in favor of such repeal of the by-laws 64⅙ shares, and against repeal 35% shares, which carried the motion by a majority vote.

continued in operation; that the by-law was therefore not subject to alteration, amendment or repeal as were other by-laws of the corporation.

The defendants deny the existence of the oral agreement alleged by plaintiffs, and take the position that the by-law was a tentative arrangement, looking toward a settlement of all the issues between the parties, and that since such a disposition was not reached, the by-law was subject to the provision relating to repeal.

After hearing on bill and answer, the Chancellor found that no agreement was made by the shareholders concerning the length of time the by-law should remain in effect, nor was there any understanding that it should not be rescinded. He concluded that it was validly repealed on March 16, 1933, in the manner provided by the by-laws, and entered a decree nisi dismissing the bill. Exceptions thereto were likewise dismissed by the court in banc, and a final decree entered, from which plaintiffs have appealed.

The primary burden which rested upon plaintiffs was to establish the oral contract relied upon in all its essential particulars: *Solis v. Harr*, 325 Pa. 100. If plaintiffs failed in this fundamental requirement, specific performance cannot be awarded, aside from any other consideration of the case. As we said in *Markovitz, Exrx., v. Markovitz Bros., Inc.*, 318 Pa. 58, the first of these cases to reach this Court, (p. 61): "The plaintiff seeks extraordinary relief and must clearly make out the right on which she relies, in order to be entitled to specific performance . . ."

Did the parties reach an agreement? As we review this record, which has been extended to undue length, it is apparent that an effort was made in December, 1930, to settle the controversial questions which were then pending. An agreement was prepared by their attorneys that was intended to adjust these differences, but it is conceded that the agreement was not executed. The chief obstacle to the consummation of an

agreement at this time was the insistence of plaintiff, Regina Markovitz, that other shareholders assent to the eleven demands which she made upon them. They are set out in detail in a letter dated December 13, 1930, written by her attorney to Russell C. Cooney, the attorney for the company. This letter was written *after* the informal meeting of shareholders held early in December, 1930, and *prior* to their December 15 meeting when the by-law was passed. From the evidence it is clear that no action was taken upon these demands at the meeting, and they therefore remained unsatisfied. Apparently no agreement had been reached at this time, concerning the future management and policy of the company.

Mr. Cooney was called as a witness for plaintiffs. In addition to his employment by the corporation, he was also one of the attorneys for the Max Markovitz estate. He was present at the stockholders' meeting of December 15, 1930. He said there was no "definite, binding agreement" not to change the by-law; that according to his recollection, when an agreement was reached for the adjustment of their differences, then, and only then, did the parties intend that the provisions of the by-law should become permanent. But no such settlement was ever effected, and hence no agreement was made concerning the future management of the corporation. The testimony of the witness carries conviction as to what were the true facts when he states: "what I wanted to say is, so far as I could see, the minds of the people had never actually met. There had always been something new introduced by one side or the other *to prevent an actual agreement.*"

The court below correctly describes the situation in these words: "We are rather inclined to the conclusion that whatever arrangement was made in the early part of December, 1930, was a *tentative arrangement* to enable the business to be legally conducted, pending a settlement of all disputes between the parties." Therefore unless plaintiffs assume as true more than they were

able to prove at the trial, it is not possible to reconcile their statement in the brief that "about a week after the agreement was made . . . a by-law was passed substantially incorporating the said agreement," in view of the indisputable fact that the very questions for which the parties were then seeking an amicable solution subsequently became the issues, for the most part, in the suits which plaintiff, Regina Markovitz, instituted against the corporation, its officers and remaining shareholders.

Moreover it is doubtful whether such an agreement would be enforceable against the estate of David Markovitz, because only two of the four executors of the estate were present at the meeting, and it does not appear that they had authority to bind their co-executors, or the estate, to the agreement, nor was it ratified by them. The record does not disclose that Harry Markovitz was present and assented to the oral agreement. Therefore the arrangement as alleged lacked sufficient parties to make it operative upon the remaining shareholders of the company, who are here named as defendants, and who did not agree to it.

In view of the failure of the parties to conclude an agreement looking toward the future harmonious operation of the company, and considering the persistent hostile attitude of the plaintiff-executrix toward the other members of the corporate family, it is inconceivable that the latter as majority stockholders, entitled to elect a majority of the Board of Directors, and thereby to designate the officers, fix their salaries and to direct, manage and control the business and policy of the corporation, would surrender these rights to the plaintiffs as minority shareholders by an agreement which would require "at least four directors [to] vote in favor of such action." Such a provision would be tantamount to handing over the control of the corporation to the minority shareholders, as possessing the balance of power therein. While they may have been willing to

share this control for a limited period of time, in an effort to secure an adjustment of shareholder differences, there are no clear and convincing proofs in the record that they agreed permanently to relinquish their rights as majority shareholders, which would support a finding to such effect, or afford the basis for a decree of specific performance.

We have reviewed the evidence of plaintiffs that such an arrangement was orally made in December, 1930, but are unable to give weight to their testimony, because it is at variance with all the credible evidence of the case. Therefore, we are led to the same conclusion reached by the court below when it said that "what the parties agreed to in the early part of December, 1930, was exactly what they did at the meetings of the directors and stockholders on December 15, 1930; that this arrangement was a tentative arrangement subject to the provisions of the by-laws relating to repeal; that the by-law adopted at the meeting of December 15, 1930, was legally repealed on March 16, 1933, in the manner provided by the by-laws of the corporation."

As the findings of the Chancellor in this respect are well supported by competent evidence and have been affirmed by the court in banc, they are binding upon us, in accordance with our established rule: *Belmont Laboratories, Inc. v. Heist,* 300 Pa. 542; *Brinton v. Davidson,* 308 Pa. 371; *Cooper's Estate,* 320 Pa. 418; *Pusey's Estate,* 321 Pa. 248; *Honan v. Donaldson,* 331 Pa. 388.

For the reasons stated it is unnecessary to discuss the remaining contentions of plaintiffs. We conclude that the decree of the court below must be affirmed.

Decree affirmed. Costs to be paid by appellants.