Markovitz, Exrx., Appellant, *v.* Markovitz
Brothers, Inc.

Argued April 17, 1939.   Before Kephart, C. J.,
Schaffer, Drew, Linn, Stern and Barnes, JJ.

*Harry Shapiro,* for appellant.

*Morris Wolf,* of *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE BARNES, July 3, 1939:

The bill of complaint was filed to require the officers of defendant to restore certain entries upon the books of the corporation with respect to the stated valuation of its common stock, or in the alternative to pay to plaintiff, as executrix, the sum of $14,454.03, which she alleges is due the estate of her deceased husband, by reason of changes made in the original entries upon the books.

Complainant is the widow and executrix of Max Markovitz, who was an original shareholder of the corporation. This proceeding is one of a series of actions instituted by complainant against the corporation and its present officers, following the decision of this court in *Markovitz, Executrix, v. Markovitz Brothers, Inc.,* 318 Pa. 58, wherein complainant unsuccessfully sought to compel the purchase of the shares which she held, pursuant to an agreement which we there construed, or otherwise to force a liquidation of the corporation.

Referring to the organization of the company, we said in *Markovitz v. Markovitz,* 336 Pa. 122: "Markovitz Brothers, Inc. was incorporated under the laws of this state on July 25, 1924, and is engaged in a jobbing business in dry goods and similar merchandise at No. 321 Market Street, in the city of Philadelphia. The corporation has enjoyed a profitable business. It succeeded to a long established partnership, consisting of four brothers, David, Max, Harry and Bernath Markovitz . . . After the company was incorporated the assets of

the partnership were transferred to the new company in exchange for its shares of stock."

On December 31, 1924, immediately prior to the transfer of the business to the corporation, the respective interests of the four brothers in the partnership were as follows:

|  | Capital Account | | Profit and Loss Account |
|---|---|---|---|
| David Markovitz | 41.5% | $225,232.20 | 35 % |
| Max Markovitz | 17.2% | 93,957.22 | 27.5% |
| Bernath Markovitz | 25.7% | 140,326.55 | 25 % |
| Harry Markovitz | 15.6% | 84,524.92 | 12.5% |
|  | 100 % | $544,040.89 | 100 % |

The variation between the partners' interest in the capital and in the profit and loss accounts was due to the fact that some of the partners were overdrawn, while others had not taken their share of the profits.

The Articles of Incorporation authorized a capital of 4,000 shares of $100 par value preferred stock, and 100 shares of common stock without nominal or par value. The incorporation agreement provided that the shares of preferred stock were to be distributed among the partners "in accordance with the standing of their capital on the books of the firm, on the 31st day of December, 1924," and that the common stock was to be issued to them in the same percentage that the profits and losses were shared, namely, David 35%; Max 27.5%; Bernath 25%; Harry 12.5%. Certificates for preferred and common shares of stock were issued to the four partners. Since the total par value of the preferred stock was $400,000, (4,000 shares of $100 par value) and the total capital of the partnership was, as we have seen, $544,040.89, the difference of $144,040.89 was entered upon the books by the company's auditor as a surplus, thus allocating to the 100 shares of common stock a book value in the amount of the excess.

The effect of this valuation of the common stock upon the company's books was to give Max Markovitz an in-

creased interest in the capital stock of the corporation to the extent of $14,454.03.[1] This resulted from the fact that although his interest in the capital was only 17.2%, he was assigned on the books 27.5% of the excess of $144,040.89, in the valuation of his shares of common stock.[2] This entry made upon the books of the corporation at the time they were set up is the crux of the case.

Shortly after the company was incorporated its accountants directed the shareholders' attention to the manner in which Max Markovitz' interest in the corporation had been increased. The subject was one of frequent discussion among the brothers during this time, and it is clear that it was not their intention that Max Markovitz should benefit as a result of the entry made upon the books with respect to the valuation of the common stock. In fact it does not appear that Max Markovitz desired to take advantage of the situation, but was willing, if an error had been made, to have it corrected upon the books.

Bernath Markovitz died on July 7, 1927, and the three surviving brothers arranged to purchase his shares in equal proportions, for $130,000. To enable them to finance this purchase it was proposed at a meeting held in June, 1928, to transfer on the books the surplus of $144,040.89 previously assigned to the common stock,

---

[1] A corresponding deficiency totaling that sum resulted in the interests of the three other partners.

[2] The following statement shows the effect of the entry with respect to the value of the interest of Max Markovitz in the corporation:

| | |
|---|---|
| He received 688 shares of preferred stock at $100 par value .................................... | $68,800.00 |
| He received 27.5% of $144,040.89, the book value of common stock ............................. | 39,611.25 |
| His total interest in the corporation ............... | $108,411.25 |
| His share of partnership capital on December 31, 1924 | 93,957.22 |
| Amount of the excess received ................... | $14,454.03 |

by allocating $10,000 thereof as the declared value of the common stock, and to apply the balance of $134,-040.89 to the profits account payable by the corporation to David, Max and Harry Markovitz. At this meeting there were present the company's accountant, and its attorney. Also present were David and Max Markovitz, who agreed that the proposed action should be taken. Harry Markovitz subsequently approved the agreement.

Again the question of the excess credit which Max Markovitz had received was discussed at this meeting, and he agreed that if an examination of the books of the company by an accountant selected by him, but compensated by the corporation, disclosed that he had received credit for more than the amount to which he was entitled, the books of the company should be corrected, so that he would receive only that sum which was rightfully his share.

On July 17, 1928, the accountant selected by Max Markovitz reported that the latter received an excess credit to the amount of $14,454.03, and recommended to the corporation that its books be corrected by a re-allocation of the amount of $144,040.89, erroneously credited to the value of the common stock, so that it should appear thereon as follows:

| | | | | |
|---|---|---|---|---|
| David Markovitz, Common Stock $3,500 | Account | payable | $55,732.20 |
| Max Markovitz, " " 2,750 | " | " | 22,407.22 |
| [3] Bernath Markovitz, " " 2,500 | " | " | 35,026.55 |
| Harry Markovitz, " " 1,250 | " | " | 20,874.92 |
| Total ..................$10,000 | | | $134,040.89 |

Max Markovitz died on June 12, 1929, without at any time having made objection to the recommendation of the accountant. The proposed changes were not made, however, until September 30, 1929, three months after his death, when correcting entries, as recommended by the accountant, were placed upon the books by the com-

---

[3] As stated, the interest of Bernath Markovitz, following his death, was acquired by David, Max and Harry Markovitz.

pany's auditor. Although plaintiff was aware that corrections were made in the books in January or February, 1931, she did not file this bill until over four years later, and then not until differences had arisen between her and other shareholders with respect to the affairs of the company. It is now asserted by her that such alteration of the books was made without the authorization of the Board of Directors or shareholders; that it was done without her knowledge and consent and in fraud of her rights. She asks that the original entries be restored upon the books, and that the payments made thereunder be repaid to the corporation.

Upon hearing in the court below on bill and answer, the Chancellor found that the entries originally made by the company's auditor at the time the books were opened were not in accordance with the incorporation agreement, and consequently the entries which the plaintiff seeks to set aside were merely in correction of those erroneously made at the time of the incorporation. A decree nisi was entered dismissing the plaintiff's bill. Exceptions were thereafter overruled, and a final decree entered, from which plaintiff has appealed.

It seems to us that the case turns upon the determination of two questions, as follows: (1) As a result of an error in the books, was the interest of Max Markovitz in the corporation greater than he was entitled to receive; and (2) did he agree that the mistake should be corrected?

It is conceded in plaintiff's brief that due to the manner in which the books were opened, Max Markovitz received an interest in the corporation which included "an excess of some $14,000 over his interest in the partnership." The evidence in the case conclusively establishes the fact that Max Markovitz was not entitled to this greater interest in the corporation; that it was not intended by the four partners that their interests therein should be different proportionately from their shares in the partnership. The inequality in favor of

Max Markovitz resulted entirely from a mistake,—an erroneous bookkeeping entry. This is shown by the fact that upon the incorporation of the company, the return made under oath to the Auditor General of the Commonwealth, placed a valuation of $100 per share upon the 100 shares of common stock, a total valuation of $10,000, and the bonus due the state was paid upon that sum. Nevertheless the accountant, when setting up the books, gave to these shares a book value of $144,040.89, which made necessary the correction of the books to accord with the true stated value of these shares.

We have examined the incorporation agreement between the partners, dated December 23, 1924, and in our opinion there is no provision therein which stipulates that the rights or shares of Max Markovitz in the corporation should be greater than he possessed in the partnership. In fact, no method whatsoever is set forth therein for distributing or disposing of the excess of the capital of the partnership, above the $400,000 par value of preferred stock. There is nothing in the record upon which a finding could be based that the Max Markovitz share in the capital of the partnership, which, on December 31, 1924, was $93,957.22, should rightfully be increased on the same day to $108,411.25 in the capital stock of the corporation, as reflected by its books, and that this enrichment should be made at the expense of his other partners. Accordingly the finding of the court below that the entries originally made upon the books of the company were due to a mistake as to their effect, and conferred upon Max Markovitz a greater interest than he had the right to receive, should not be disturbed by this Court.

The question whether it was agreed by Max Markovitz that the error should be corrected is entirely one of fact. The testimony of the company's auditor and attorney, who participated in the discussion of the matter at the meeting held in June, 1928, is clearly to the effect that

he did so agree. His conduct shows that he had no desire, as the court finds, "to enrich himself at the expense of his brothers because of an error that was made at the time the books of the corporation were set up." Again we see no reason to disturb the findings made by the court below, which are so completely supported by the evidence.

Our review of the record has convinced us that in all respects the findings of the Chancellor, as well as his deductions and inferences from the testimony, are based upon and fully sustained by the evidence before him. Therefore, in accordance with our settled rule, such findings affirmed by the court in banc are conclusive and binding upon us, and must be given the effect of a verdict of a jury: *Belmont Laboratories, Inc. v. Heist,* 300 Pa. 542; *Kratz v. Allentown,* 304 Pa. 51; *Feurstein v. New Century Realty Co.,* 304 Pa. 271; *Brinton v. Davidson,* 308 Pa. 371; *Cooper's Estate,* 320 Pa. 418; *Pusey's Estate,* 321 Pa. 248; *Patterson's Estate,* 333 Pa. 92.

The decree is affirmed. Costs to be paid by appellant.