## Reilly v. O'Boyle's Bar, Inc.

*H. Toll, A. J. Levinson,* for plaintiff.

*C. W. Sweeney,* for defendants.

LEVINTHAL, J., February 10, 1956.—Plaintiff seeks to have a bailment lease and judgment note, executed by Diane Kraus, individual defendant, reformed by adding as an obligor corporate defendant, O'Boyle's Bar, Inc., and also to have corporate defendant added as a party defendant in an action pending in Common Pleas Court No. 1.

Plaintiff is in the business of manufacturing and installing fixtures and equipment in taverns. On March 30, 1955, plaintiff entered into a contract with individual defendant, Diane Kraus, to install fixtures and equipment in a tavern located at 1416 Chancellor Street, Philadelphia. At the time of the contract, plaintiff claims that Diane Kraus represented to him that she was the sole owner of the premises and, relying on that representation, the written contract was signed

only by individual defendant. Actually, the tavern belonged to a corporation, of which Mrs. Kraus and two men who worked as bartenders at the tavern were the stockholders. Mrs. Kraus was president and general manager of the corporation, and owned 32½ shares of the stock, each of the other two stockholders owning 12½ shares.

The initial payments under the contract were made by Mrs. Kraus, and plaintiff claims that he did not discover that she was not the sole owner until three weeks after he had started the installation of his equipment. He discussed the matter with Mrs. Kraus, and she told him not to worry about it, that he would be paid. He contends that he did nothing about it at that time because there was no reason to start an argument about it.

Plaintiff completed his work about the end of May, but there is some difference between the parties as to whether or not he has performed the work satisfactorily. However, this question is not in issue in the present proceedings. Plaintiff entered judgment on the judgment note in the contract on April 15, 1955. When individual defendant failed to meet the payments due under the contract, plaintiff caused execution to be issued against the tavern. But on October 11, 1955, defendant corporation filed a property claim, stating that it owned the property and not Diane Kraus.

Plaintiff claims that due to the misrepresentations and fraud of Diane Kraus, he is unable to confess judgment against corporate defendant, who actually owns the tavern in which his fixtures were installed by him. He asks the court to reform the note and enable him to execute against corporate defendant.

Defendant Diane Kraus admits that the contract was signed by her, but denies that she committed any fraud or misrepresentations. . . . (Findings of fact omitted.)

### Discussion

It appears clear from the pleadings and testimony in this case that defendant, Diane Kraus, signed a contract with plaintiff for the installation of fixtures and equipment in a tavern at 1416 Chancellor Street. The benefits of this contract ran only to the owner of the tavern, and at the time of the signing of the contract Mrs. Kraus represented herself to be the owner.

If this were merely a case of agency under which Mrs. Kraus was acting for an undisclosed principal, we would have no difficulty in holding the undisclosed principal liable for the payment of the amount due under this contract. There is little doubt that Mrs. Kraus here was acting as a general agent who was either expressly authorized to conduct all transactions on behalf of the corporate owner of the tavern, or who was, at least, clothed with the apparent authority to conduct such transactions on its behalf. There is nothing before us which indicates that the other "principals" here, namely Frank Benedetto and Joseph Felicetti, the bartender stockholders, objected in any way to Mrs. Kraus's execution of all contracts for renovation of the tavern. In fact, it appears that they were aware of what Mrs. Kraus had done and fully acquiesced. Hence, if there were no corporation involved here, and Mrs. Kraus were merely a general agent for Benedetto and Felicetti, who were undisclosed principals, the facts of this case could lead to no conclusion other than that Benedetto and Felicetti were liable for this debt, under the A. L. I. Restatement of the Law of Agency, §§190, 194 and 195. See, also, Hubbard & Co. v. Tenbrook & Bro. 124 Pa. 291 (1889).

The question before us is whether or not the same principle is to be applied where the undisclosed principal is a corporation, instead of an individual. In the

present case, Mrs. Kraus has held herself out to be the sole owner of the tavern. There is nothing here shown to indicate that she was forbidden to enter into any contracts for the renovation of the tavern. Indeed, it is apparent that she was given complete authority to act for the corporation. Furthermore, the contracts for the renovation of the tavern were solely for the benefit of defendant corporation.

Defendant corporation is not bound on the face of the contract itself. Mrs. Kraus signed the bailment lease and the warrant to confess judgment in her individual name and not as president of the corporation. But she was nonetheless the agent of an undisclosed principal.

In the case of Hubbard & Co. v. Tenbrook & Bro., supra, plaintiffs entered into a contract with, and delivered goods to one Thomas Sides, whom they believed to be the owner of a small grocery business. When it was discovered that the store was actually owned by defendants and that Sides was merely their agent, although operating the business in his own name, the Supreme Court of Pennsylvania, without any legal precedent, laid down the rule that "To allow an undisclosed principal to absorb the profits, and then when the pinch comes, to escape responsibility on the ground of orders to his agent not to buy on credit, would be a plain fraud on the public."

We can see no significant difference between that case and the present situation, other than the fact that here we have a corporation rather than individuals as the undisclosed principal. But there is nothing magical about a corporation which imparts a protective veil around it which the law cannot penetrate.

Corporate defendant here relies on the general proposition that an officer and majority stockholder of a corporation cannot bind the corporation without the

express authority of the board of directors. But that principle is applicable where the creditor knows that the officer is dealing for a corporation and also knows, or has reason to know, that he is not specifically authorized to do so (Millward-Cliff Cracker Co's Estate, 161 Pa. 157 (1894)), or where the corporation obtains no benefit from the unauthorized transaction: Worthington v. Schuylkill Electric Railway Co., 195 Pa. 211 (1900).

That rule has never been applied where a corporation has intentionally or negligently clothed its officers or agents with apparent authority to perform acts for it, and, in that case, the corporation is estopped to deny that such apparent authority is real as against innocent third persons dealing in good faith with such officers or agents: 2 Fletcher Cyc. Corp., sec. 449, p. 255; Severance v. Heyl & Patterson, Inc., 123 Pa. Superior Ct. 553 (1936).

Indeed, a corporation is bound on an obligation incurred under these circumstances, even though the contract was for the benefit of the officer personally and not of the corporation: Chestnut Street Trust Co. v. Record Publishing Co., 227 Pa. 235 (1910).

Furthermore, a corporation may be bound on obligations incurred by its officers or agents, even where the obligations are not incurred in the name of the corporation, if it appears that the corporation received the benefit thereof: E. Silk Mfg. Co. v. First National Bank & Trust Co., 338 Pa. 139 (1940); Markovitz v. Markovitz, 336 Pa. 122; Kendall v. Klapperthal Co., 202 Pa. 596 (1902).

In the present case, we are satisfied that the contract between plaintiff and individual defendant, Diane Kraus, was entered into on the misrepresentation of individual defendant that she was the sole owner of the tavern. It is also clear from the testimony of Mrs. Kraus that she considered herself in a position to

handle arrangements for the renovation of the tavern. There is no testimony about the reaction of the other two stockholders, Benedetto and Felicetti, during this time, but there is little doubt that they knew what was going on due to their close association with the business. As for the other members of the board of directors, Violet Connelly and Anna Hild Gorham, who had the legal authority, together with Diane Kraus, to run the corporation, it appears that they also knew what was going on and added their tacit approval to Mrs. Kraus's misrepresentations. The husband of Mrs. Gorham, who represented the former owners of the tavern in the sale thereof, talked to plaintiff's representative about the time of the sale, and not only led him to believe that Mrs. Kraus was the owner, but also informed him that she was desirous of making renovations to the tavern. From all of these facts, we can only conclude that all of the other members of defendant corporation clothed Mrs. Kraus with the apparent authority to act on behalf of the corporation, at least so far as the renovations were concerned.

Furthermore, there is no doubt in our mind that the entire benefit of this work went directly and solely to the corporation. Mrs. Kraus herself testified that she considered the corporation the owner of the fixtures and equipment after the work was completed. Under these circumstances, we can only find that the debt due plaintiff is actually the obligation of defendant corporation.

Plaintiff is entitled to have the bailment lease and the judgment note contained therein reformed to reflect the true parties to the obligation. The Act of February 24, 1806, P. L. 334, 4 Sm. L. 270, sec. 28, 12 PS §739, authorizes the prothonotary to enter judgment "against the person or persons who executed the same . . . . " This authorization is not limited to entering judgment against the parties who actually

placed their signatures on the instrument, but includes principals whose agents have signed for them: Jamestown Banking Co. v. Conneaut Lake Dock & Dredge Co., 339 Pa. 26 (1940); Miller v. Royal Flint Glass Works, 172 Pa. 70 (1895). Although these cases concern themselves with a disclosed principal, we can see no reason for not including the present undisclosed principal within the rule.

Furthermore, these cases deal with the power of the prothonotary, not of a court of equity, to enter judgment against the principal of an agent who signed a judgment note. If a ministerial officer, who has had no opportunity to hear all of the facts of the case, is given the power to enter judgment against a disclosed principal, we can see no reason why a court of equity, which has taken full testimony and found fraud to exist in the execution of a document, should not reform a warrant to confess judgment in order to bind the true beneficiary under the contract.

### Conclusions of Law

1. Individual defendant, purporting to act solely for herself on the contract with plaintiff, was actually acting as the agent of an undisclosed principal, and corporate defendant is liable on that contract as the undisclosed principal of individual defendant.

2. Corporate defendant has clothed individual defendant with the authority to make renovations to the tavern of corporate defendant.

3. The entire benefit of the contract in question was and is enjoyed by corporate defendant.

4. Plaintiff is entitled to have the bailment lease and judgment note reformed by adding corporate defendant as an obligor.

### Decree Nisi

And now, to wit, February 10, 1956, it is hereby ordered, adjudged and decreed that the bailment lease

contract between the Seabrook Manufacturing Stainless Steel and Formica Equipment Company and Diane Kraus be reformed to include as lessee O'Boyle's Bar, Inc., of 1416 Chancellor Street, and that O'Boyle's Bar, Inc., be added as a party defendant in the cause, Common Pleas Court No. 1, March term 1955, no. 4821.

This decree nisi will become absolute unless exceptions thereto be filed within 20 days.