Norris Tool and Machine Co., Appellant, *v.* Rosenlund et al.

Argued December 3, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*H. James Sautter,* for appellant.

*Charles E. Kenworthey,* with him *Schnader, Kenworthey, Segal & Lewis* and *Horace Michener Schell,* for appellees.

OPINION BY MR. JUSTICE JONES, January 14, 1947:

Norris Tool and Machine Co. filed its bill in equity, seeking, in the alternative, (1) to restrain the defendant, the Mutual Fire Insurance Company of Germantown (hereinafter referred to as Mutual), from issuing certain shares of stock to defendant Arthur O. Rosenlund, (2) to prohibit the negotiation or encumbering of the particular shares by Rosenlund to anyone except the plaintiff corporation and (3) to compel the transfer of the shares in controversy by Rosenlund to the plaintiff upon payment by the latter to Rosenlund of such moneys as he may have paid Mutual on account of the issue price of the shares. Separate answers were filed by the defendants, and the case went to trial on the merits. The learned chancellor filed an adjudication and a decree nisi dismissing the bill at the plaintiff's costs. Exceptions by the plaintiff to certain of the chancellor's findings of fact and conclusions of law and to the decree nisi were dismissed by the court en banc after argument and a final decree dismissing the bill was entered. From that decree the plaintiff took the present appeal.

The plaintiff company is a close corporation. During the time of the transactions embraced by the complaint, its entire capital stock was owned by Charles W. Gardner and Joseph Ullman, the former being president and the latter secretary and treasurer of the company. By the time the bill of complaint was filed Ullman had become sole owner of the company's capital stock and, also, its president.

The gravamen of the complaint is that the plaintiff was harmfully deceived and overreached by Rosenlund in connection with the disposition of certain rights of the plaintiff to subscribe to shares of stock in the Germantown Fire Insurance Company, a proposed capitalized successor to Mutual. For four or five years prior to the close of 1943, Rosenlund, an insurance broker, had acted for the plaintiff in placing its fire insurance requirements, having in that connection taken out policies with Mutual. The plaintiff had thus become a substantial policyholder of Mutual. In 1943, the conversion of Mutual to a stock company was proposed and representatives of Mutual requested Rosenlund to use his influence with policyholders in having them vote in favor of the proposed conversion. Rosenlund did so act with respect to the plaintiff company through its owners and officers, Gardner and Ullman. Under the plan of conversion, policyholders were entitled to subscribe for stock in the proposed new company on a basis proportional to their policy holdings in Mutual, but such rights, in the case of any one policyholder, were limited to subscribing for 1000 shares which was the extent of the allotment to which the plaintiff would be entitled.

On December 14, 1943, the plaintiff, acting by Ullman with the consent and approval of Gardner, executed and delivered to Rosenlund an assignment of all of its rights to subscribe to the stock of the new company; and on April 28, 1944, the plaintiff, again acting

by Ullman, executed and delivered to Rosenlund a new assignment of the plaintiff's rights to subscribe in the same form as the first except that the later assignment was limited to plaintiff's rights to subscribe in excess of 500 shares of the new stock. It was then the intent of the parties that Ullman and Gardner should individually have rights to subscribe to 250 shares each and Rosenlund the rights to subscribe to the remaining 500 shares. The proposed conversion of the insurance company from a mutual to a stock company was approved at a special meeting of policyholders on June 21, 1944; and a certificate of the plaintiff's rights to subscribe to 1000 shares of stock in the new company was subsequently issued. On July 10, 1945, the certificate was assigned by the plaintiff in divided interests, viz., to Ullman, rights to subscribe for 250 shares, to Gardner, 250 shares, and to Rosenlund, 500 shares. This assignment was executed for the plaintiff company by Gardner as president and Ullman as secretary and treasurer. The controversy in the instant case revolves around a single issue of fact as to the bona fides and propriety of the circumstances under which 500 of the plaintiff company's stock subscription rights were assigned to Rosenlund.

On the one hand, Ullman swore in the plaintiff's bill and testified at trial that, as the plaintiff's representative, he had signed papers presented to him by Rosenlund without paying much attention to what they were because of his great confidence in Rosenlund; that he never read any of such papers that he signed; that Rosenlund had not told him what the papers were; that he thought they were merely to aid in the conversion of the insurance company from a mutual to a stock company; and that, although he finally realized that he was individually subscribing for stock in the new insurance company, he did not know that he was participating in the transfer to Rosenlund of 500 of the plaintiff's rights to subscribe. On the other hand, Rosenlund's testimony,

corroborated in material parts by Gardner's, presents an entirely different picture. According to those witnesses, Rosenlund at all times made full and complete disclosure to the plaintiff company through both Ullman and Gardner of all the facts and circumstances concerning the plaintiff's rights to subscribe to stock in the proposed new company and, specifically, had told Ullman and Gardner the value of those rights on the market at the very time that the company's designated representatives were assigning the plaintiff's rights to subscribe in apportioned interests, as above stated, to Ullman, Gardner and Rosenlund.

The decision in this case depends upon whether the accredited testimony be that of Ullman or of Rosenlund; and the appellant's brief concedes as much, certainly at least impliedly. The learned chancellor justifiably chose to accept Rosenlund's version of the relevant and material facts; and those facts fully support the findings. The findings, in turn, impel the conclusions upon which the final decree rests. Necessarily, that is an end of the matter. The findings of a chancellor, having support in the evidence and having been affirmed by the court en banc, have the effect of a jury's verdict and are conclusive and binding upon us on appeal: *Edirose Silk Manufacturing Company v. First National Bank and Trust Company*, 338 Pa. 139, 142, 12 A. 2d 40; *Baur v. Abbott*, 337 Pa. 33, 34, 10 A. 2d 5; *Markovitz, Exrx., v. Markovitz Brothers, Inc.*, 336 Pa. 129, 136, 8 A. 2d 38. There is no merit in the appellant's contention that Rosenlund stood in a confidential relation to the plaintiff.

The appellant further contends that the assignment to Rosenlund of rights to subscribe lacks validity because it was not ratified by formal corporate action; and there is no evidence that Rosenlund acted in such regard with authority from the plaintiff company. The argument is without substance, resting, as it does, upon

a technicality not available to the company in the circumstances. The rule stated in the *Edirose Silk Manufacturing Company* case, supra, is fully applicable here, viz., "In an appropriate case and where, as here, justice to all parties requires it, this Court will not hesitate to treat as identical the corporation and the individual or individuals owning all its stock and assets. Particularly in equity, where substance is more important than form, the Court will not in a case before it permit the fiction of corporate entity to lead to an unjust result. [cases cited]". The plaintiff company was completely bound by the action of its only officers and stockholders, who purported to act in behalf of the company, in the matter of the assignment of the rights to subscribe.

The decree is affirmed at the appellant's costs.