Escheat of $92,800.

Rogers Appeal et al.

Argued November 12, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Raymond J. Broderick,* for claimant, Rogers, Trustee, appellant.

*F. Raymond Heuges,* for claimant, Giordano, Admr., appellant.

*B. Graeme Frazier, Jr.,* in propria persona, with him *Frazier & Frazier,* for escheator, appellee.

*J. Sydney Hoffman,* for Benjamin and Jessie Lieberman, appellees.

OPINION BY MR. JUSTICE JONES, January 3, 1949:

These appeals are from an order made in an escheat proceeding. The appellee has filed motions to dismiss which are denied for reasons which we shall hereinafter state.

The proceeding under review involves $92,800 in paper currency of the United States of America in various denominations found, as the petition of the escheator avers, by one Benjamin Lieberman in a corrugated box or carton, securely tied with cord, in the cellar of a house, owned and occupied by him and his wife, at 2131 South 4th Street, Philadelphia, and found, moreover, in circumstances indicating that the money had been voluntarily and intentionally placed or hidden where it was found. The petition further avers that the money was not Lieberman's; that he had no knowledge of how it came to be where he found it; and that he had voluntarily turned it over to the Philadelphia Bureau of Police where it came into the protective custody of James H. Malone, Director of Public Safety. For the discharge

of his duty in the premises, Malone rented a safe deposit box in a central city bank in the name of "The Director of Public Safety of Philadelphia" and therein deposited the money where it has since remained and still is. In addition to the matters just stated, the petition set forth the due appointment of the escheator; that the money is without a rightful owner; and that it is in the custody of Director Malone as trustee, bailee or depositary. The petition concluded with a prayer for a summons against the custodian, public notice of the proceeding by advertisement and an adjudication escheating the money to the Commonwealth.

Following due publication of the notice required by the preliminary order of court, appearances were entered and answers were filed for three separate claimants or groups of claimants, viz., one by Lieberman and his wife who claimed ownership of the money as the finders thereof and as the owners of the property where it was found, another, by creditors of a bankrupt milk company who claimed the money as the rightful property of the bankrupt whose bookkeeper Lieberman had been, and the third by the administrator of a decedent who, it was averred, was the owner of the money and had hidden it in the house at 2131 South 4th Street, Philadelphia, for purposes of concealment. Each of the answers claimed the money for the respective respondents. The answer by the creditors of the bankrupt milk concern also included a prayer that the petition for escheat be dismissed on the ground that the funds were not subject to escheat under the laws of the Commonwealth. A substituted trustee of the bankrupt's estate was later granted leave to intervene to pursue the claim of the bankrupt company and its creditors.

On these pleadings, a hearing was entered upon by the court below. At the outset of the hearing, the Liebermans formally withdrew their claim to the money as the finders thereof or as the owners of the property where it was found and, in lieu thereof, claimed status as in-

formers in the escheat proceeding and the compensation to which the law entitled them as such. Before the taking of testimony on the remaining claims had been completed, the motion to dismiss the proceeding was formally renewed. Further hearing on the claims was postponed, argument on the motion was had and, thereafter, to wit, on May 20, 1948, the learned trial judge entered an order which, without expressly directing the dismissal of the escheat proceeding, did as much, in effect, by awarding the money in suit to the Commonwealth, not as an escheat but upon a theory of reversion to the sovereign apparently evolved from the ancient law of treasure trove. The award was not made in reliance upon Sec. 3 (6) of the Intestate Act of April 24, 1947, P. L. 80 (20 PS § 1.3) applicable where a decedent dies intestate leaving property and survived by no one capable of inheriting under the Act. To the order entered, the claimants filed exceptions which, after argument, were dismissed by the court en banc in an order entered on July 6, 1948. The two remaining claimants, or claimant groups, took these several appeals on July 12 and July 15, 1948. On September 22, 1948, the court, *sua sponte,* entered an order *as of* July 6, 1948, designed merely to clarify the order of that date.

The ground on which the appellee has moved to dismiss the appeals is that they were taken either belatedly or prematurely, depending upon whether the order of May 20, 1948, or of September 22, 1948, is considered the appealable order; Sec. 12 of the Escheat Act of 1889, P. L. 66, 27 PS § 45, requires that an appeal from a decree of escheat be taken within thirty days of the filing of the adjudication; and the instant appeals were not taken, as already noted, until July 12th and 15th. The appellee argues that inasmuch as "efforts at rehearings do not extend the appellate period fixed by statute" (citing *Commonwealth v. Irwin,* 345 Pa. 504, 508, 29 A. 2d 68; see also *Commonwealth, etc., v. Emerson C. Custis Co.,* 139 Pa. Superior Ct. 22, 24, 10 A. 2d 850,

and *Estate of Rachel C. Finley Core,* 113 Pa. Superior Ct. 388, 390, 174 A. 9), the exceptions filed to the order of May 20, 1948, failed to toll the running of the time for an appeal therefrom. The fallacy of that argument lies in the fact that the order of May 20, 1948, was, in the circumstances, interlocutory and not final. The findings of a trial judge (except in trials at law where a jury has been waived) do not assume the binding effect of a jury's verdict for appeal purposes until they have been confirmed by the court *en banc*: *Teats v. Anderson,* 358 Pa. 523, 527, 58 A. 2d 31; *Barnsley v. Shaffer,* 358 Pa. 415, 417-418, 57 A. 2d 870; *Herr v. Bard,* 355 Pa. 578, 583, 50 A. 2d 280; *Norris Tool and Machine Co. v. Rosenlund,* 355 Pa. 560, 564, 50 A. 2d 273; *Commonwealth ex rel. v. Socony-Vacuum Oil Company, Inc.,* 352 Pa. 527, 528, 43 A. 2d 98; *H. Daroff & Sons, Inc., v. Vitullo,* 350 Pa. 501, 506, 39 A. 2d 595. The filing of exceptions to the order of May 20, 1948, was all the more indicated in the present instance in view of the fact that the learned trial judge, upon considering a motion to dismiss, made an order on the merits without having heard all proper parties to the record. Indeed, in the situation thus brought about, it would not be illogical to suggest that the thirty-day limitation for appeals is not presently applicable as the order entered by the trial court was not an adjudication in escheat. On the other hand, the order of September 22nd, as its verbiage shows, was not intended to extend the effective date of the July 6th order; nor could it properly have been meant to do so: see *Commonwealth v. Irwin* and cases similarly cited supra. At most, the order of September 22nd was not designed to do more than clarify what the order of July 6th already embraced; nor could it operate to render premature the appeals taken from the order of July 6, 1948. The motions to dismiss are, therefore, denied.

Coming to the merit of the appeals, it is apparent from what we have already indicated that the order

entered below must be reversed. At the procedural stage which the litigation had reached, the question for decision was whether the escheator's petition averred a *prima facie* case for escheat. And, such continues to be the justiciable question here. Whether the Commonwealth might be able to claim the fund as treasure trove is not presented by the record in this case. Anything we might say, therefore, in that connection would be but a *dictum* at best, the same as in the one case in this State where the law of treasure trove was discussed but not followed: *Huthmacher v. Harris's Administrators,* 38 Pa. 491, 499-500. Cf. *Warren v. Ulrich,* 130 Pa. 413, 18 A. 618, where the facts fulfilled the requirements of any common law definition of treasure trove and, yet, this court made no mention of that legal status but submitted to the jury the question of ownership there involved on a statement of the law that ". . . the finder of money has title to it against all the world except the true owner. . . ." We purposely refrain, therefore, from considering whether the law of treasure trove is or ever has been a part of the law of Pennsylvania. The present is not a common law action. It is upon statutory law exclusively that the escheator's petition rests the Commonwealth's claim of right to the money in suit.

It is, of course, the duty of a petitioner for escheat "clearly to aver a case within some act or acts of assembly": *Commonwealth ex rel. v. Pennsylvania Co.,* 339 Pa. 513, 516, 15 A. 2d 280. The petition in the instant case fully supplies the legal requirements of the situation. The Act of April 17, 1869, P. L. 71, is still in force: *Commonwealth ex rel. v. Pennsylvania Co.,* supra. Section 3 of that Act (27 PS § 332) provides that "Whenever any trustee, bailee or other depositary is or shall be seized or possessed of property, real, personal or mixed, as a fiduciary agent, which property is or shall be without a rightful owner, the same shall escheat to the commonwealth, subject to all legal demands on

the same." This statutory provision relates to a situation such as the instant case presents where the rightful owner is *unknown* and not merely *unlocateable*: see *Rosenfeld's Appeal,* 337 Pa. 183, 186, 10 A. 2d 570. According to the averments of the petition, Director Malone is possessed of the funds in controversy in a fiduciary capacity and not as the owner or a claimant thereof. He is, therefore, a trustee or depositary within the meaning of the Act. In *Vosburgh's Estate,* 279 Pa. 329, 332, 123 A. 813, it was said that "Every deposit is a trust, except possibly general bank deposits; every person who receives money to be paid to another or to be applied to a particular purpose is a trustee, if so applied as well as when not so applied." The foregoing is a paraphrase of an earlier quotation in *Warner, Assignee, v. McMullin,* 131 Pa. 370, 381-382, 18 A. 1056, from an opinion by Chancellor KENT in *Kane v. Bloodgood,* 9 Johns Ch. 90, cited also in *Yorks's Appeal,* 110 Pa. 69, 79, 2 A. 65.

A further instance wherein the court below deemed the petition deficient was in its averment that there was no known rightful or legal owner of the money. The learned trial judge held that the averment to such effect was but a conclusion of law and, forthwith, discarded it as an insufficient pleading. An averment of a legal status, or the lack of it, of course does rest upon a legal conclusion. But, such an averment is also one of fact in the sense that there is no known person capable of supplying the factual incidents necessary to the creation of the legal status of ownership. And, that is the meaning to be imputed to the petition. How else, it may be asked, could an averment that property is without a rightful or legal owner be pleaded? An averment to such effect is obviously essential to an escheat proceeding. The court below denominated the things done or performed with or concerning the money after Lieberman found it as "nonoperative facts" and said that they were without legal influence or effect upon the question

of ownership. So much is correct, but the fact that the money ultimately came into the hands of a trustee or depositary, where it now is, is of materiality to the question as to the propriety of escheat.

The remaining objection advanced to the petition is that it avers the circumstances of the finding of the money by the Liebermans (on their own property, moreover) and that, consequently, there is a finder's qualified ownership to be imputed to them (cf. *Warren v. Ulrich,* supra) which directly controverts the averment of the petition that the money is without a rightful or lawful owner. The fact is, as already stated, that the Liebermans disclaimed formally of record any right to the money as the finders thereof; and, as they are under no legal duty or obligation to press such a claim, their disclaimer, so far as they are concerned, is effective, and the money is, consequently, without a known rightful or lawful owner. Furthermore, the petition directly avers that Lieberman was not the owner of the money and that he had denied having any knowledge of the owner or how the money came to be where he found it. Even had the Liebermans not disclaimed any right to the money as the finders, the question of law as to whether the facts established a finder's right in them to qualified ownership of the property would still be a matter for adjudication under the pleadings in the escheat proceeding. Jurisdiction of subject matter never depends upon whether or not relief is grantable under the proven facts: see *DeWaele v. Metropolitan Life Insurance Company,* 358 Pa. 574, 581, 58 A. 2d 34, and authorities there cited.

Our conclusion is that the petition pleads a *prima facie* case of escheat under the laws of the Commonwealth and that the matter should be proceeded with to full and complete hearing and a final adjudication of all issues involved.

Order reversed with a procedendo; costs to abide the final outcome.