## Tops Cleaners, Inc. (No. 1)

*Philip Salkin,* for petitioners.

*Charles Blasband,* for assignees.

FORREST, J., December 11, 1958.—Two former officers of a corporation have filed this petition for a rule to show cause why they should not be allowed to file a proof of claim nunc pro tunc with the assignees

for the benefit of creditors of the corporation. The six months' period for the filing of such proofs of claim, prescribed by the Insolvency Act of June 4, 1901, P. L. 404, sec. 22, as amended, 39 PS §81, having elapsed, it was necessary for claimants to seek leave to file their claim nunc pro tunc. A rule was granted upon the assignees, who filed an answer to the petition.

The issues are: (1) Whether petitioners are barred by laches from filing a claim nunc pro tunc; (2) whether a business interruption insurance policy, which was assigned for the benefit of creditors, is an asset of the estate for distribution pro rata among all creditors, or whether the policy and the proceeds therefrom are a trust for the exclusive benefit of the former officers of the corporation.

From the depositions we find that the facts are as follows:

Tops Cleaners, Inc., a Pennsylvania corporation, was incorporated on January 25, 1954. On May 22, 1956, its dry cleaning establishment at Montgomeryville, which constituted the most profitable part of the business, was totally destroyed by fire. Creditors pressed for the payment of their claims and threatened the corporation with involuntary bankruptcy. As a result, on June 22, 1956, the corporation made a voluntary assignment of its assets to John Taft, Julian Podgur and L. H. Wessner, for the benefit of creditors of the corporation. By the terms of this assignment the corporation assigned "for the benefit of all its creditors . . . all of its property, real, personal and mixed, of every kind and nature."

At the time of the fire, the corporation was the owner and named insured of two then current policies of fire insurance, with riders covering business interruption loss, issued by Travelers Fire Insurance Company of Hartford, Conn., and the World Fire and Marine Insurance Company of Aetna Insurance Group,

each in the face amount of $12,500, subject to an 80 percent coinsurance clause. These riders provided:

"2. The measure of recovery in the event of loss hereunder shall be the reduction in 'gross earnings' directly resulting from such interruption of business less charges and expenses which do not necessarily continue during the interruption of business, for not exceeding such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy, but not exceeding the actual loss sustained by the insured resulting from such interruption of business. Due consideration shall be given to the continuation of normal charges and expenses including payroll, to the extent necessary to resume operations of the insured with the same quality of service which existed immediately preceding the loss."

Petitioners, Sidney Greenstein and Gene J. Duffy, were the president and treasurer, respectively, of Tops Cleaners, Inc., at the time of the fire and at the time of the assignment. After the assignment, Duffy worked for the assignees for a brief period but Greenstein did not. The amounts paid to the assignees in settlement of the claims of the corporation against the insurance companies included a calculation of loss of gross earnings on an assumption, inter alia, that the assignees would continue to pay petitioners' salaries indefinitely. Thus the loss as computed for insurance purposes was greater than the actual loss.

Pursuant to the Insolvency Act of June 4, 1901, P. L. 404, supra, this court by decree dated September 6, 1956, ordered that the assignees for the benefit of creditors give notice to all creditors by mail and by publication "that all creditors who fail to make proof

of their claims within six months from the date of the first publication, in the manner provided by law, shall be debarred from coming in upon the fund collected by the assignees."

Petitioners have alleged that they "had no knowledge prior to the fire and thereafter when the assignment was made, that they had any right to claim a fractional part of the insurance as constituting compensation . . . for officers' salaries; that only recently has it been disclosed that they have a right to make a claim upon the fund or proceeds which have been remitted by said insurance companies to the assignee under the use and occupancy clause of the fire insurance policies and this is primarily the reason why a formal claim was not submitted on or before April 15, 1957 . . ."

It may be that petitioners should be denied relief because of laches. The insurance companies paid the business interruption loss under the above mentioned policies on or about December 21, 1956. Petitioners did not file a formal claim against the companies before April 15, 1957. This petition to file a claim nunc pro tunc was not filed until November 13, 1957. However, we have considered this case on its merits.

Counsel for petitioners concede that they have found no authority in support of their proposition that officers or displaced officers of a corporation are entitled to the payment of salaries or loss of expected salaries on contracts of employment out of the proceeds of a business interruption policy, although an assignment of all of the corporate assets for the benefit of all of its creditors has been made. Petitioners' argument seems to be two-fold: (1) Petitioners are third party beneficiaries of the policy; (2) the corporate form should be disregarded and the corporate veil should be "pierced" in order to protect the shareholders of the

corporation as opposed to the creditors. These contentions are not meritorious.

"Whenever one not a party to a contract attempts to bring an action upon it, two questions arise: (1) Does the agreement confer upon him any rights, or, in other words, was it made for his benefit; and (2) If so, does our rule of law permit him to enforce these rights by a direct action at law.

"If it appears that the contract was not made for the benefit of the third person, then he has no rights to be enforced": Greene County v. Southern Surety Co., 292 Pa. 304, 308 (1928).

"To be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by one of the parties to the contract and the third person that the latter should be a beneficiary, but both parties to the contract must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; the obligation to the third party must be created, and must affirmatively appear, in the contract itself: [Citing authorities]": Spires v. Hanover Fire Insurance Company, 364 Pa. 52, 56 (1950). See also 8 P. L. E. §164, pp. 207, 208.

In this case there is no indication in the policies of insurance that particular individuals were intended to be made beneficiaries. The named insured was the corporation and only the corporation.

Petitioners' second contention, as mentioned above, is that the corporate veil should be pierced, in effect, so as to create individual rights in the officers and shareholders which the insurance policies give only to the corporation. The fiction of a corporation as an entity distinct from the aggregate of individuals com-

prising it will be disregarded and the individuals and corporation considered as identical provided that justice or public policy demand it and the rights of innocent parties are not prejudiced thereby and the theory of corporate entity not made useless: Markovitz v. Markovitz, 336 Pa. 122, at 126 (1939).

". . . in equity, where substance is more important than form, the Court will not in a case before it permit the fiction of corporate entity to lead to an unjust result": Edirose Silk Manufacturing Company v. First National Bank and Trust Company, 338 Pa. 139, 143 (1940). See also Norris Tool and Machine Co. v. Rosenlund, 355 Pa. 560, at 565 (1947).

However, a case such as this has no resemblance to the cases involving fraud or some other illegality where courts in effect have treated the corporation and its members as one. Petitioners here are manufacturing a proposition which would give them, as to their claim of unpaid wages, a preferred status or a status akin to that of beneficiary of a trust, against or upon the proceeds of the insurance policies. Tops Cleaners, Inc., according to the brief filed by counsel for petitioners, "was a closely held corporation having but three shareholders, the petitioners herein, and one Bernard Greenstein, a brother to one of the petitioners." Thus by petitioners' own admission, disregarding the corporate entity and substituting the officers as beneficiaries of the policies issued to the corporation would not pierce through a fiction in order to avoid an unjust result; it would raise a fiction to produce the unjust result of a preference in favor of certain creditors who were also the principal shareholders, the supposed risk-bearers, to the detriment of other creditors who had no vested interest as owners of the business.

Petitioners argue that there was a direct correlation between their skill and efforts and the profits of the business before the fire, and that the direct con-

sequence of their labors before the fire was to increase the amounts payable on the insurance policies; that equitably, therefore, petitioners ought to be allowed a preferred status as to the proceeds of the policies. It might be argued with equal plausibility that, if the artificial entity known as the corporation is to be disregarded so as in effect to vest individuals with legal title to assets of the corporation, the same artificial entity should also be disregarded so as to lay upon such individuals the legal obligation for the debts of the corporation.

And now, December 11, 1958, the rule is discharged.