Robert P. Kane, Attorney General of the Commonwealth of Pennsylvania *v.* Insurance Company of North America et al. (Cross Appeals)

Argued April 5, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, BLATT and DiSALLE.

*Marvin I. Block,* Assistant Attorney General, with him *Michael Von Moschzisker,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for Robert P. Kane.

*Robert B. Ely, III,* with him *Barrett Godwin Tawresey,* for Insurance Company of North America, et al.

OPINION BY PRESIDENT JUDGE BOWMAN, September 28, 1978:

Almost as hoary as the intangible personal property which is its subject, this escheat proceedings initiated in 1966 by the Attorney General (Commonwealth) against the Insurance Company of North

America and several of its subsidiaries (INA) is before us on cross appeals from an order of the lower court of January 11, 1977 dismissing the Commonwealth's petition for escheat as to one class of property and granting in part and dismissing in part its claim to a second class of property.

The lower court so ordered after remand to it by the Supreme Court for further proceedings consistent with an opinion and order of the Supreme Court in *Sennett v. Insurance Company of North America,* 432 Pa. 525, 247 A.2d 774 (1968).

Germane to the remand and to these cross appeals, the Supreme Court affirmed a prior order of the lower court permitting further Commonwealth inspection of INA books and records but vacated the lower court's order declaring as not subject to escheat[1] two classes of intangible personal property in controversy, namely (a) the proceeds of uncashed checks and drafts issued by INA, and (b) "deposit" payments by insureds under 850 policies of perpetual fire insurance, which second class is divided into two subclasses consisting of 830 policies on property no longer owned by the insureds and 20 such policies on property which apparently had been demolished or destroyed by other casualty. For want of an adequate evidentiary record the Supreme Court declined to pass upon these classes of personal property as subject to escheat—or payment into the State Treasury without escheat—and reasoned that further investigation might establish a factual foundation for the legal issues raised.

Upon remand the Commonwealth conducted a further investigation of INA books and records but pro-

---

[1] "Although the pleadings are not clear, both parties and the lower court treated the case as one seeking payment into the State Treasury without escheat. . . ." *Sennett, supra* at 528 n.2, 247 A.2d at 775 n.2.

duced no additional factual information relevant to its claim; however, the parties did stipulate certain additional facts. Upon the original record made and these stipulated facts after remand the lower court issued its order and a comprehensive opinion including findings of fact and its conclusions of law. Its findings of fact are not disputed in these cross appeals.

We shall first consider the cross appeals as they relate to deposits paid to INA by insureds with respect to 850 perpetual fire insurance policies. As noted above, the deposits paid by insureds with respect to these policies consist of two subclasses (a) deposits as to 830 of such policies, the insured property of the policy being no longer owned by the insured, and (b) deposits as to 20 of such policies, the insured property having been demolished or destroyed by other casualty. The lower court held that the deposits paid to INA as to the first subclass were not subject to escheat or payment in the State Treasury without escheat while the deposits paid to INA as to the second subclass were.

In so concluding the lower court reasoned that the perpetual fire insurance policies in question which provided that "in case of *sale* of the property insured, if the deposit money be not demanded within sixty (thirty or ninety) days after the *sale*, it shall be considered as sunk for the benefit of the Company" (emphasis added) for want of demand by the insured within the prescribed time after *sale* vested title to the deposit in INA, whereas the right to demand refund of the deposit remains in the insured even though the property be demolished or destroyed by other casualty absence proof of *sale* of the insured property and want of demand within the prescribed time.

In its appeal as to this class of property the Commonwealth contends that the lower court erred in find-

ing the insurance policy provisions to be unambiguous and thereupon simply applying those provisions to the undisputed facts. INA, in its cross appeal as to the subclass of 20 policies, essentially argues that the Commonwealth has not met its burden of proof that ownership of the deposits remain with the insureds.

Asserting that the word "deposit" as used in the perpetual fire insurance policies in question must be given a different meaning than that of a premium for insurance coverage and that the word "sunk" as contained in the refund provisions of the contract must be accorded "sinking fund" principles as to the ownership of these "deposits" the Commonwealth argues that the deposits remain the property of the insureds notwithstanding the *sale* of the insured property and the failure of the insured to claim refund of the entire "deposit" within the prescribed time after sale.

It is not disputed that an insured under these policies was entitled to refund of the deposit if demand was made therefor within the prescribed time after sale of the property and it is agreed that as to this subclass of 830 insured properties a sale had been made and no refund had been demanded by the insured within the prescribed time. Under these circumstances we believe the lower court properly concluded that the deposits in these cases become the property of INA and that there exists no property subject to escheat. *Sennett, supra,* at 531, 247 A.2d at 777; *Einhorn v. Philadelphia Electric Co.,* 410 Pa. 630, 190 A.2d 569 (1963).

INA's cross appeal, docketed to No. 416 C.D. 1977, is from that portion of the order of the lower court granting the Commonwealth's petition as to the deposits on twenty policies, the property insured thereby having been destroyed or removed by unknown causes and on which no claims under said policies

were ever made. A review of the terms of the policies compels the conclusion that said deposits would be the property of the insureds, did not "sink" to the benefit of INA, and are, accordingly, escheatable.

Section V of the policy provides:

V. Cancellation by Assured.—This policy shall continue in force for so long a time as the deposit-money shall remain with the Company (subject, nevertheless, to the other parts of these conditions); but the assured may at any time reclaim the deposit-money, which shall be paid within sixty days after such demand, subject to a deduction of TEN per centum; but in case of *sale* of the property insured, if the deposit-money be not demanded within sixty days after the *sale,* it shall be considered as sunk for the benefit of the Company. Mortgagees or or others to whom this policy shall have been transferred as collateral security cannot withdraw the deposit-money. (Emphasis added.)

There is no limitation on the time in which a policy-holder may claim his deposit if his property is destroyed by an uninsured risk and the "sinking" clause, being limited to "sales" of the property, it is not applicable to these twenty policies. As the policy-holders are entitled to a refund upon demand, and as no demand has been made, said deposits are escheatable.

Turning to that class of property consisting of the proceeds of uncashed checks and drafts issued by INA, the following findings of fact made by Judge TAKIFF of the court below, *Kane v. Insurance Co. of North America,* No. 771, Dec. Term, 1962, filed January 20, 1976, are material:

48. At various times since 1941, the Respondent [INA] issued checks, drafts and credit memoranda to various persons. Neither the

persons to whom such checks, drafts and credit memoranda were issued, nor any one in their behalf, has claimed the amounts of such checks, drafts and credit memoranda. . . .

. . . .

50. No claim for the amounts of such checks, drafts and credit memoranda has been made for more than seven successive years, and the whereabouts of the persons entitled to claim such amounts have been unknown for the said period of time.

51. INA issued checks, drafts and credit memoranda at the rate of about one million items per year.

52. Except as recited in the following findings, [53-57] the only evidence as to the circumstances surrounding the issuance of these drafts is advice copies sent to the cashier of the company, showing the draft number, issue date, payee and a general notation of purpose, all intended to serve for a test comparison whenever the original is presented.

53. The checks, drafts and credit memoranda fall into three categories:

a) third party drafts; issued to third parties under a liability policy under which the company agreed to indemnify the insured against any loss by reason of liability imposed by law for damages payable to a third party.

b) first party drafts; issued to the insured himself to cover injury to his own health or property under a policy protecting the same.

c) drafts for goods and services; issued for goods or services performed or to be performed.

54. As a matter of practice, the company might issue these drafts (a) either as payment of an agreed settlement of a claim under one of its policies, or as an offer of settlement not later accepted by the third party or the policy-holder, or (b) as payment for goods or services already received or as an offer to pay for goods or services to be received later.

55. With respect to third party drafts, the policy in connection with which a claim draft was issued did not impose any liability upon INA until the policyholder had become legally obligated to pay damages to a third party.

56. With regard to first party drafts, in some instances these drafts were issued with respect to policies of insurance providing that no suit might be brought thereon unless started within twelve months of an insured loss.

57. As to no item here in litigation and of the types described in findings 52(a), 52(b) and 52(c) has the policyholder in the second case or any third party claimant in the first or third category brought any action under the policy or against the policyholder, respectively.

These findings of fact are unchallenged in these proceedings, and accordingly, are not open to dispute.

Sections 3(b) and 3.(c) of the Act of May 2, 1889 (Act), P.L. 66, *as amended*, 27 P.S. §333(b) and (c),[2] provide:

(b) Whensoever the . . . person entitled to any . . . personal property within or subject. to the control of the Commonwealth or the where-

---

[2] Escheats are now the subject of the "Disposition of Abandoned and Unclaimed Property Act" (DAUPA), Act of August 9, 1971, P.L. 286, 27 P.S. §1-1 et seq. These proceedings, however, begun in 1962 are controlled by the Act.

abouts of such . . . person entitled has been or shall be and remain unknown for the period of seven successive years, such real or personal property . . . shall escheat to the Commonwealth, subject to all legal demands on the same.[3]

(c) Whensoever any . . . personal property within or subject to the control of this Commonwealth has been or shall be and remain unclaimed for the period of seven successive years, such . . . personal property . . . shall escheat to the Commonwealth, subject to all legal demands on the same.

The fatal flaw in the Commonwealth's case is its failure to prove that those persons to whom the checks, drafts and credit memoranda were payable, or to whose accounts they were credited, were unqualifiedly entitled to same. The findings of the court below that at least some of the items in question were drawn in anticipation of unliquidated claims never made, or liabilities never incurred, leaves the Commonwealth, whose rights in an escheat proceeding are derivative, *In the Matter of the Inquisition of Escheat of the Estate of Sarah Desilver, Deceased,* 5 Rawle 111 (Pa. 1835); *Murdock v. John B. Stetson Co.,* 32

---

[3] With regard to proceedings for payment into the Treasury without escheat, in *Alpern v. Girard Trust Corn Exchange Bank,* 403 Pa. 391, 393 n.1, 170 A.2d 87, 88 n.1 (1961), it was said:

Under this statute, [27 P.S. §437] *any funds or property subject to escheat* may be taken by the Commonwealth without escheat, i.e., the Commonwealth takes custody and control thereof but not legal title thereto. The object of taking 'without escheat' as opposed to 'pure escheat' is to afford the rightful owner or his lawful heirs, without limitation as to time, the right to claim restitution or refund of such property or money. (Emphasis added.)

Thus, property subject to payment into the Treasury without escheat must be nevertheless subject to escheat.

Pa. D. & C. 2d 300 (C.C.P. Phila. 1963) ;[4] *State ex rel. Parsons v. Standard Oil Co.*, 5 N.J. 281, 74 A.2d 565 (1950), in the position of attempting to create unliquidated claims where none exist.[5] *See Sennett, supra* at 530, 247 A.2d at 777; *Texas Co. v. State ex rel. Coryell*, 198 Okla. 565, 180 P.2d 631 (1947). It can claim no more than the interest of the unknown or absentee owner.

In this attempt by the Commonwealth to escheat funds which INA at all times prior to the drawing of the instruments in question owned outright, which it may or may not have ever been obligated to pay out and which may never have been rightfully owned by anyone other than INA, the Commonwealth has failed to make out, as it must, a prima facie case for escheat within a pertinent Act of Assembly, and has failed to meet its burden of proof. *Escheat of $92,800*, 361 Pa. 51, 62 A.2d 900 (1949); *Pennsylvania Railroad Co. Escheat Case*, 348 Pa. 317, 35 A.2d 58 (1944); *Commonwealth ex rel. Reno v. Pennsylvania Co.*, 339 Pa. 513, 15 A.2d 280 (1940); 30A C.J.S. *Escheat*, §16, p. 946 (1965) (The state has the burden of proof.) ;[6] and resolving, as we must, all doubts against the Commonwealth, *Murdock, supra; In re: Holmlund's Es-*

---

[4] *But see* Section 7(1) of the DAUPA, 27 P.S. §1-7(1).

[5] The mere drawing of a check or similar instrument creates no liability thereon and the drawer's account may not be charged at least until presentation for payment or demand thereon is made. *See Mallisee v. Hawkins*, 322 Pa. 58, 185 A. 230 (1936); *Murdock, supra*; Section 3-501 of the Uniform Commercial Code—Commercial Paper, Act of April 6, 1953, P.L. 3, reenacted by the Act of October 2, 1959, P.L. 1023, 12A P.S. §3-501.

[6] The fundamental prerequisite of an escheat proceedings is property subject to escheat. *Einhorn v. Philadelphia Electric Co.*, 410 Pa. 630, 635, 190 A.2d 569, 571 (1963). We might add to that, a person entitled to the property sought to be escheated. *In the Matter of the Inquisition of Escheat of the Estate of Sarah Desilver, Deceased, supra.*

*tate,* 232 Ore. 49, 374 P.2d 383 (1962) ; 30A C.J.S. *Escheat,* §2, p. 917 (1965), the order of the lower court shall be affirmed.

## ORDER

. Now, September 28, 1978, the order of the lower court is hereby affirmed.