Treasurer & Receiver General *v.* John Hancock Mutual Life Ins. Co.

TREASURER AND RECEIVER GENERAL *vs.* JOHN HANCOCK
MUTUAL LIFE INSURANCE COMPANY.

Suffolk. November 4, 1982. — March 11, 1983.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Abandoned Property. Practice, Civil,* Parties. *Statute,* Construction.
*Limitations, Statute of.*

The State Treasurer had standing pursuant to both G. L. c. 175, § 149E,
inserted by St. 1980, c. 130, and c. 200A, § 12 (*b*), amended by
St. 1980, c. 130, to bring an action under both c. 200A, the abandoned
property law, and c. 175, §§ 149A-149D, the unclaimed funds law,
against a life insurance company to recover funds represented by un-
cashed checks issued by the company in the course of its business, and
not properly reported and remitted prior to the effective date of
St. 1980, c. 130, which consolidated the unclaimed funds and aban-
doned property laws.  [414-417]

In an action by the State Treasurer against a life insurance company to
recover funds under G. L. c. 200A, § 7, the abandoned property law,
for the years 1969 through 1979, and under c. 175, §§ 149A-149D, the
unclaimed funds law, for the years 1963 to 1980, there was no merit to
the company's claim that it need not report certain contractual obliga-
tions by reason of the running of the six-year statute of limitations
governing them.  [417-418]

In an action by the State Treasurer against a life insurance company to
recover funds under G. L. c. 200A, § 7, the abandoned property law,
and c. 175, §§ 149A-149D, the unclaimed funds law, there was no
merit to the company's claim that the Treasurer's action was barred by
the applicable statutes of limitations where the company's failure to
report any of the property prevented the accrual of the Treasurer's
claims.  [418-420]

In an action by the State Treasurer against a life insurance company to
recover certain funds under G. L. c. 200A, the abandoned property
law, contractual obligations of the company, evidenced by uncashed
checks it had issued, were "intangible personal property" and,
therefore, constituted abandoned property as that term is defined in
c. 200A, § 5, which was subject to the reporting and payment provi-
sions of § 7.  [420-426]

CIVIL ACTION commenced in the Superior Court Department on December 23, 1980.

Questions of law were reported by *Hurd,* J. The Supreme Judicial Court granted requests for direct appellate review.

*Morris M. Goldings,* Special Assistant Attorney General (*H. Glenn Alberich, Paul E. Shanley & David J. Epstein* of California with him) for the plaintiff.

*Edward J. Duggan (Joseph F. Ryan* with him) for the defendant.

ABRAMS, J. At issue is a dispute between John Hancock Mutual Life Insurance Company (John Hancock) and the Treasurer and Receiver General of the Commonwealth (Treasurer) over John Hancock's duty to report and remit certain monies to the Treasurer under the abandoned property law, G. L. c. 200A, and the unclaimed funds law, G. L. c. 175, §§ 149A-149D.

The Treasurer is claiming funds represented by uncashed checks issued by John Hancock, covering its obligations for such items as accident and health insurance payments, life insurance proceeds, agent commissions, salaries, and vendor payments.[1] If a check remained uncashed for six years after its issuance, John Hancock transferred the sum to its general funds as income for the benefit of its policyholders. John Hancock continued to maintain a separate computer record, however, containing information about the transactions for which the checks were written, and continued to honor those checks presented for payment.[2]

Both the Treasurer and John Hancock moved for partial summary judgment on the issue of John Hancock's obligation to report and remit specified funds, amounting to, $2,975,816.67, under G. L. c. 200A, § 7, for the years 1969

---

[1] The judge found that John Hancock issued the checks in several numbered series, to classify each check by the type of contractual obligation for which it was issued.

[2] The judge made no finding that John Hancock continued to honor its obligations represented by the uncashed checks, but this fact is undisputed on the record.

through 1979, and under G. L. c. 175, §§ 149A-149D, for the years 1963 to 1980.

The Treasurer asserts that instead of retaining the funds, John Hancock should have turned them over to the Commonwealth, accompanied by descriptive reports, as required by G. L. c. 200A, and G. L. c. 175, §§ 149A-149D.[3] John Hancock denies the Treasurer's allegations and raises several defenses, including a claim that the Treasurer lacked standing to bring this action, and that this action is barred by the statute of limitations.

The judge ruled that under both statutes the Treasurer has standing to bring the action, and no statute of limitations bars the ability to recover funds from John Hancock. The judge also ruled that John Hancock is not required to report and remit funds under G. L. c. 200A, because, prior to 1980, § 5 of that statute did not apply to John Hancock. The judge reported the correctness of his rulings on the motions to the Appeals Court. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). Both parties applied for direct appellate review, and we granted their applications.

We affirm the judge's rulings on standing and on the statutes of limitations for both G. L. c. 200A, and G. L. c. 175, §§ 149A-149D. However, we conclude that since G. L. c. 200A, § 5, is applicable to John Hancock, it is subject to the reporting and payment requirements of G. L. c. 200A, § 7. Therefore, the Treasurer's motion for partial summary judgment should have been granted.

1. *Background of G. L. c. 200A and G. L. c. 175, §§ 149A-149D.* The abandoned property law was first enacted in St. 1950, c. 801, and codified as G. L. c. 200A. Abandoned property is property whose owner is unknown or had neglected to claim it during a specific number of

---

[3] John Hancock filed reports and remitted some funds to the Commonwealth pursuant to G. L. c. 175, §§ 149A-149D, in the years in question. The Treasurer contends that this reporting was incomplete. In addition, John Hancock never filed a report under G. L. c. 200A, § 7, during those years.

years known as a "dormancy" period.[4] Section 7 requires persons and most other entities holding abandoned property to report and remit it to the Treasurer.[5] Sections 1 through 6 of G. L. c. 200A define the various types of property presumed abandoned. The remaining sections provide for procedures to reunite missing owners with the surrendered property, and provide for interpretation and enforcement of the law.

The unclaimed funds law, codified as G. L. c. 175, §§ 149A-149D, inserted by St. 1946, c. 455, and amended by St. 1950, c. 523, applies only to life insurance companies and, until 1980, was enforced by the Commissioner of Insurance. See St. 1980, c. 130, § 15. Unclaimed funds are also property whose owner is unknown or has neglected to claim it for a specified dormancy period.[6] Section 149A specifies the types of unclaimed funds governed by the act; § 149B requires reports of unclaimed funds; § 149C requires surrender of reported funds to the Commonwealth; and § 149D gives custody of those funds to the Commonwealth, while indemnifying the insurance companies. During the years in question, the Commissioner of Insurance made triennial examinations of John Hancock's books to ensure its compliance with this and other laws.

The unclaimed funds and abandoned property laws were consolidated in 1980 by St. 1980, c. 130. That statute places all enforcement responsibility for both laws in the office of the Treasurer.[7]

---

[4] Under G. L. c. 200A, the dormancy period was fourteen years from 1950-1975, St. 1950, c. 801, § 1(b); ten years from 1975-1980, St. 1975, c. 277, § 1 (b), St. 1975, c. 608; seven years from 1980-1981, St. 1980, c. 130, §§ 6, 7; and five years since June 30, 1981, St. 1981, c. 351, § 102.

[5] Prior to 1969, the Commissioner of Corporations and Taxation was responsible for compliance with the act. Statute 1969, c. 377, transferred this authority to the Treasurer.

[6] Under G. L. c. 175, §§ 149A-149D, the dormancy period was seven years.

[7] John Hancock's actions after the passage of this statute are not in dispute in the case before us.

2. *Standing.* John Hancock claims that the Treasurer lacks standing to pursue this action under both G. L. c. 175, § 149E, and G. L. c. 200A, § 12 (*b*). These provisions were added and amended, respectively, when the unclaimed funds and abandoned property laws were revised and consolidated by St. 1980, c. 130. The issue is whether the standing sections now prevent the Treasurer from bringing actions to recover funds not properly reported prior to May 5, 1980, the effective date of the 1980 act. We conclude that the Treasurer has standing to pursue the Commonwealth's claims.

Section 149E,[8] which was inserted in G. L. c. 175 by St. 1980, c. 130, § 2, provides that the Treasurer may bring an action to obtain reports of unclaimed funds, as required by G. L. c. 175, § 149B, and to demand the surrender of the funds detailed within those reports. John Hancock argues that § 149E has no retroactive effect and, therefore, cannot be used to give the Treasurer standing on claims arising prior to 1980. However, the Legislature provided in § 16[9] of St. 1980, c. 130, that the earlier § 149A governs unclaimed funds which were reportable prior to May 5, 1980. Prospective compliance with the unclaimed funds law is governed by G. L. c. 200A, § 5A. That section incor-

---

[8] General Laws c. 175, § 149E, inserted by St. 1980, c. 130, § 2, provides: "The state treasurer may at any reasonable time following reasonable notice examine the records of any life company to determine if said company has complied with the provisions of this chapter. In the event any life company refuses to permit the state treasurer to examine such records, the state treasurer shall petition the superior court for an order to allow the state treasurer or his agents to examine all appropriate business records of such person.

"If the state treasurer believes that any life company has violated the provisions of section one hundred and forty-nine B by withholding or failing to report funds specified therein, the state treasurer shall petition the superior court for an order to require the holder thereof to surrender such unclaimed funds to him."

[9] Statute 1980, c. 130, § 16, provides: "On the effective date of this act the provisions of section one hundred and forty-nine A of chapter one hundred and seventy-five of the General Laws shall apply to property reportable prior to the effective date of this act."

porated the unclaimed funds law into the abandoned property law, effective May 5, 1980. Thus, as we read the statute, the Legislature intended that the new § 5A would operate prospectively, while § 149E would operate retrospectively. Retroactive application of § 149E to G. L. c. 175, §§ 149A-149D, is therefore the only construction of the statute "in harmony with common sense and sound reason." *Johnson's Case,* 318 Mass. 741, 746 (1945), quoting *Morrison* v. *Selectmen of Weymouth,* 279 Mass. 486, 492 (1932). This construction is consistent with the obvious legislative intent not to permit the forfeiture of the Commonwealth's claims to unclaimed and abandoned property which should have been, but were not, reported and remitted by holders.

John Hancock also claims that prior to the 1980 enactment of G. L. c. 175, § 149E, no statute gave the Treasurer the standing to sue for violations of § 149B, and that, therefore, the Treasurer may not retroactively be given standing to enforce that provision. However, we interpret St. 1980, c. 130, as merely making a housekeeping shift in enforcement responsibility from the Commissioner of Insurance to the Treasurer, through amendments to G. L. c. 175, § 149B, and insertion of § 149E. We believe that the change in the official responsible for enforcement does not create a new cause of action, but merely provides for more vigorous enforcement of existing claims. The Legislature makes clear its intention to give the Treasurer retrospective as well as prospective enforcement authority by requiring the Commissioner of Insurance to transfer the records filed pursuant to § 149B before May 5, 1980, to the Treasurer. See St. 1980, c. 130, § 15. The words of the statute "are to be considered in the light of the obvious aim to be accomplished by the Legislature and as employed by the Legislature as expressing the practical means by which the legislative aim is to be attained." *Sun Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 340 Mass. 235, 238 (1960).

Statute 1980, c. 130, also amended G. L. c. 200A, § 12 (*b*),[10] giving the Treasurer standing to bring an action to collect abandoned property. John Hancock asserts that the amended § 12 (*b*) repeals and replaces the former version of that section, thereby preventing the use of the old section to give the Treasurer standing for actions arising before May 5, 1980. The amendment, however, merely removed the requirement that the Treasurer examine the records of the holders of abandoned property, and does not affect his standing to bring actions.[11]

John Hancock's argument that retroactive enforcement of § 12 (*b*) violates due process principles must also fail. The essence of the defendant's claim is that there is due process protection for the right to violate a prior law. The cases John Hancock cites do not suport such a contention.[12]

---

[10] General Laws c. 200A, § 12 (*a*) and (*b*), as amended through St. 1980, c. 130, § 12, provide: "(*a*) The treasurer may at any reasonable time and upon reasonable notice examine the records of any person to determine if said person has complied with the provisions of the chapter. In the event such person refuses to permit the treasurer to examine such records, the treasurer shall petition the superior court for an order to allow the treasurer or his agents to examine all appropriate business records of such person.

"(*b*) If the treasurer believes that the holder of property has violated the provisions of section seven, he shall petition the superior court for an order to require the holder thereof to turn over said property to him."

[11] John Hancock also argues that §§ 5 and 7 of the abandoned property law do not apply to it, and that these sections therefore prevent the Treasurer from having standing to enforce the law. We treat this argument in Part 3, *infra.*

[12] The defendant also bases its due process argument on its reliance on past government actions indicating its compliance with the law, such as the triennial examinations of its records by the Commissioner of Insurance and early proposals by the Commissioner to amend the statute to close "loopholes" in the law. This argument must fail. "[A]dministrative reliance cannot validate that which may be illegal." *Johnson* v. *Martignetti,* 374 Mass. 784, 790 (1978). See *Utah Power & Light Co.* v. *United States,* 243 U.S. 389, 408-409 (1917); *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Auth.,* 387 Mass. 687 (1982); *Attorney Gen.* v. *Methuen,* 236 Mass. 564, 578-579 (1921). Further, we do not "apply principles of estoppel to public entities where to do so would negate requirements of law intended to protect the public interest." *Phipps Prods. Corp.* v. *Massachusetts Bay Transp. Auth., supra* at 693-694.

388 Mass. 410                                           417

Treasurer & Receiver General *v*. John Hancock Mutual Life Ins. Co.

In addition, to the extent that St. 1980, c. 130, brings new types of abandoned property within its scope, that property need only be reported retrospectively for the seven years prior to the effective date of the act.[13] Thus, the statute, as we read it, continues retrospective enforcement for all property which was previously within the ambit of the statute. We conclude that the Legislature intended continued enforcement of the abandoned property and unclaimed funds laws prior to the effective date of St. 1980, c. 130, and the Treasurer has standing to effectuate the policies of those statutes.

3. *Statute of limitations.* John Hancock claims that the Treasurer's suit is barred by statutes of limitations, based on its interpretation of G. L. c. 200A, § 7 (*c*), as amended through St. 1969, c. 377, § 2.[14] At that time § 7 (*c*) read, "No person shall be required to report any property on a presumption of abandonment to the state treasurer if the period of time provided by any statute of limitations applicable to the owner's right as against a holder has expired unless the court orders him to do so." John Hancock claims that it need not report its contractual obligations under § 7 (*c*), because the six-year statute of limitations governing them under G. L. c. 260, § 2, expired prior to the end of the ten or the fourteen year dormancy period, which was in effect until 1980. See note 4, *supra.* We do not agree.

The Legislature could not have meant to allow statutes of limitations governing the various types of property defined as abandoned in G. L. c. 200A, §§ 1-6, to determine randomly the scope of the abandoned property law. Most typical statutes of limitations are shorter than the ten- or the fourteen-year dormancy periods in effect under the abandoned property and unclaimed funds laws. If John Hancock's argument were to prevail, no type of abandoned

---

[13] The seven-year rule was changed to five years by St. 1981, c. 351, § 112.

[14] Because the section was repealed by St. 1975, c. 277, § 4, this argument only applies to that property reportable between 1969 and 1974.

property subject to a typical statute of limitations could ever
be collected by the Treasurer.  Thus, John Hancock's con-
struction of the statute would render the statute difficult, if
not impossible, to enforce.  It also would create a situation
in which the purposes of the abandoned property act, to
reunite the property with its owners and to employ the
property for public purposes in the interim, could not be
achieved.  "An intention to enact a barren and ineffective
provision is not lightly to be imputed to the Legislature." *In-
surance Rating Bd.* v. *Commissioner of Ins.*, 356 Mass. 184,
189 (1969).  Therefore, we read § 7 (c) as applying only to
that property for which the statute of limitations had ex-
pired as of the effective date of St. 1950, c. 801.

Under this interpretation, the purpose of § 7 (c) was to re-
quire only prospective reporting of abandoned property.  In
this way, no person or entity who had relied on the use of
the funds after expiration of a statute of limitations and
before passage of St. 1950, c. 801, would be disadvantaged.
This interpretation is further supported by the repeal of this
version of § 7 (c) in 1975, because that section had become
an unnecessary anachronism by then.  See St. 1975, c. 277,
§ 4.

John Hancock also claims that this suit is barred by
statutes of limitations accruing at the end of the dormancy
period, and expiring before the Treasurer filed his com-
plaint on December 23, 1980.  John Hancock argues that
the Treasurer's complaint is similar to one in tort for conver-
sion, and therefore it is subject to the two- or three-year
statute of limitations set forth in G. L. c. 260, § 2A,[15] and
applicable to the Commonwealth under G. L. c. 260, § 18.
Under this argument, the Treasurer would be barred from
recovering most of the funds reportable before 1980.  Based
on the language of the statute, we think that John
Hancock's decision not to report any property presumed

---

[15] General Laws c. 260, § 2A, inserted by St. 1948, c. 274, § 2, provided
a two-year limitations period.  It was amended to provide for a three-year
period, effective January 1, 1974.  See St. 1973, c. 777, §§ 1, 4.

abandoned prevents it from using the statute of limitations as a defense.[16]

General Laws c. 200A, § 7 (*b*),[17] as amended through St. 1969, c. 377, § 2, provides: "All property contained in said report [filed under § 7 (*b*) 'by September first of each year for the preceding July first'] unless earlier claimed by the owner or his legal representative shall be turned over to the state treasurer on or before November first each year." [18] Thus, pursuant to the statute, the property does not become due until the report is filed. Until the property is owed to the Commonwealth, the statute of limitations does not begin to run.[19] Cases from other jurisdictions support our interpretation. See *Travelers Express Co.* v. *Cory,* 664 F.2d 763 (9th Cir. 1981); *Blue Cross* v. *Cory,* 120 Cal. App. 3d 723 (1981);[20] *Sennett* v. *Insurance Co. of N. Am.,* 432 Pa. 525, 532-533 (1968).

---

[16] Based on this interpretation, we need not and do not reach any of the arguments concerning John Hancock's waiver of its rights under the statute or the Treasurer's claim of fraudulent concealment. We also need not decide whether G. L. c. 260, § 2, referring to contractual obligations, or G. L. c. 260, § 2A, referring to tortious conversion, is the appropriate statute of limitations for an action brought by the Treasurer to obtain abandoned contractual obligations wrongfully withheld by their holder.

[17] Our interpretation of G. L. c. 200A also applies to G. L. c. 175, §§ 149A-149E, since § 149B has similar reporting requirements, and § 149C has similar remitting requirements, to those in G. L. c. 200A, § 7 (*b*), prior to its amendment by St. 1980, c. 130, § 8.

[18] This reporting portion of § 7 (*b*) was amended and recodified as § 7 (*d*), and the payment portion of § 7 (*b*) was amended and recodified as § 8A (*a*), by St. 1980, c. 130.

[19] Although the Treasurer is claiming a right to the reports as well as to the abandoned property itself, we view the reports as incidental to an action for the property, which is the Commonwealth's primary interest.

[20] John Hancock argues that the *Blue Cross* case is inapposite, because the statute at issue there required reporting of all abandoned property with an explanation as to why it should not be surrendered to the State, if its classification were disputed. We believe this difference is minor. Our abandoned property reporting forms provide for reporting of property even when its status is questioned. Once reported, the Commonwealth and the holder may dispute the status of the property.

In addition, the concept of a statute of limitations is antithetical to the purposes of the abandoned property act. If we adopted John Hancock's construction of the statute, we would permit every entity to make a self-serving interpretation of the abandoned property and unclaimed funds laws, and to use that interpretation to its benefit by failing to report such property and barring any later enforcement to action by a statute of limitations. We are unwilling to attribute to the Legislature an intent to grant unfettered discretion to the holders of abandoned property to determine what property must be reported, and therefore what property is owed to the Commonwealth. We affirm the judge's ruling that no statute of limitations bars the Treasurer's action against John Hancock.

4. *Liability.* The parties also dispute whether John Hancock's contractual obligations, evidenced by its uncashed checks, are defined to be abandoned property by G. L. c. 200A, § 5, and are thus subject to the reporting and payment provisions of § 7.[21] In 1969, at the time the law originally applied to John Hancock, § 5, as amended through St. 1962, c. 248, § 1, stated: "Except as provided in section six A, all dividends, stocks, bonds, money, credits and claims for money and credits, and all intangible personal property, and the increments of any of them, except deposits and the increments thereon referred to in selections three and four, held by, or in the control of, any person having a residence or principal place of business in this commonwealth, other than a corporation organized under the laws of another state, but including any fiduciary appointed in this commonwealth for such a corporation, for the benefit of any person, or held by, or in the control of, a corporation organized under the laws of another state, but having a place of business in this commonwealth, for the

---

[21]Other issues concerning John Hancock's liability under G. L. c. 175, §§ 149A-149D, were not decided or reported by the judge. Hence, we reach only those issues decided by the judge and reported to the Appeals Court, pursuant to Mass.R.Civ.P. 64, 365 Mass. 831 (1974).

benefit of any person whose last known residence or place of business was in this commonwealth, shall be presumed abandoned unless claimed by the beneficiary or person entitled thereto within fourteen years after the date prescribed for payment or delivery. Any dividend, distribution, interest or payment on principal declared, set aside, accumulated or owed with respect to property presumed abandoned under the foregoing provisions of this section shall itself be presumed abandoned."

The Treasurer argues that John Hancock's contractual obligations are "intangible personal property," and therefore are subject to § 5 of the statute. We agree. Thus, we reject John Hancock's claim that, prior to 1980, § 5 applied only to fiduciaries.

To support its interpretation, John Hancock points to language in the section referring to "beneficiaries" and holding property "for the benefit of any person," claiming that this language limits the rest of the section.[22] However, as we read the statute, its expressed intent is to include contractual obligations, a type of intangible personal property not typically held by fiduciaries.[23]

---

[22] John Hancock also bolsters its interpretation of § 5 with its reading of § 7 (c), as discussed in Part 3, *supra* at 417-418. It argues that because § 7 (c) allows statutes of limitations on the underlying claims to bar the Commonwealth from collecting that abandoned property, § 5 would make more sense if read as applicable only to fiduciaries, for whom statutes of limitations may run less frequently. Since we have rejected John Hancock's interpretation of § 7 (c), this argument also fails.

[23] Although here we are discussing § 5 as amended, our interpretation of the section also applies to the 1950 version of § 5, inserted by St. 1950, c. 801, which provided: "All dividends, stocks, bonds, money, credits and claims for money and credits, and all intangible personal property, and the increments of any of them, held by, or in the control of, any person for the benefit of a person residing or having a place of business in this commonwealth shall be presumed abandoned unless claimed by the beneficiary or person entitled thereto within fourteen years from the time the holder, trustee or other responsible person became obligated to return them or their equivalent to the proper owner or claimant." The amendments to this provision do no more than clarify the meaning of the section. See *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221, 228 (1972), cert. denied, 409 U.S. 1108 (1973).

Our construction of the statute is supported by its references to "dividends" and to "credits and claims for money and credits," which generally refer to property held in a debtor-creditor relationship rather than in a trustee-beneficiary relationship. "[I]n construing a statute, its words must be given their plain and ordinary meaning according to the approved usage of language." *Johnson's Case*, 318 Mass. 741, 747 (1945).

Moreover the section specifically extends its scope beyond "beneficiaries" to "persons entitled" to the abandoned property. Thus, the statute, by its plain terms, encompasses persons other than beneficiaries. "None of the words of a statute is to be disregarded, for they are the main source for the ascertainment of the legislative purpose." *Commissioner of Corps. & Taxation* v. *Chilton Club*, 318 Mass. 285, 288 (1945).

Additionally, a 1958 amendment made G. L. c. 200A, § 5, applicable to nonresident corporate holders of abandoned property. See St. 1958, c. 283.[24] Had the Legislature intended § 5 to affect fiduciaries only, then that amendment would apply solely to the "exotic" set of property in trust funds for the benefit of Massachusetts residents held by incorporated fiduciaries from other States. We believe this construction is not consistent with the intent of the Legislature to reach both nonresident holders and beneficiaries, as well as Massachusetts residents and entities, prior to 1980.

Although there is no formal legislative history, "[w]e have previously relied on [legislative documents and] materials in determining legislative intent." *Kartell* v. *Blue Shield of Mass. Inc.*, 384 Mass. 409, 420 (1981). A 1958 House document states that the proposed amendment "would eliminate the requirement that the record owner of the property be resident of Massachusetts or have a place of business here, before property unclaimed for fourteen years would be

---

[24] Statute 1958, c. 283, also included nonresident beneficiaries within § 5.

388 Mass. 410                                       423

Treasurer & Receiver General v. John Hancock Mutual Life Ins. Co.

presumed to be abandoned. This change will accomplish two desirable objectives. It will permit corporations and trustees for liquidated corporations to terminate their responsibilty for dividends unclaimed for fourteen years by turning them over to the Commonwealth. By the same token, it will increase the revenue which the Commonwealth derives from the Abandoned Property Law." 1958 House Doc. No. 99, at 13. Thus, the Legislature did not intend to limit G. L. c. 200A, § 5, solely to property held in fiduciary capacity.

In interpreting the statute, we may also look to the original purposes of the act,[25] as described in the Governor's Annual Message to the Legislature. "We may consider this [message] for any light it might shed on the resulting legislation." *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 852 (1977). See *Kartell* v. *Blue Shield of Mass., Inc.,* 384 Mass. 409, 421-422 (1981); *Boston* v. *Massachusetts Bay Transp. Auth.,* 373 Mass. 819, 826-827 (1977). In his January 4, 1950, message, Governor Paul A. Dever said: "We need to adopt a law which will cover the disposition of *all kinds* of abandoned and unclaimed property; will protect true owners' rights when and if they appear to substantiate their claims; and provide a smooth and simple procedure for transferring such property into the state treasury and out of the hands of those in unjust possession." See 1950 Sen. Doc. No. 1, at 22. See also 1958 House Doc. No. 99, at 13. Among the unjust possessors, he named banks, insurers, debtors, companies, and individuals. 1950 Sen. Doc. No. 1, at 22.

---

[25] The parties also support their arguments with the disputed meaning of the Commonwealth's past administrative interpretation of the statute, in its actions toward John Hancock, steps it took in enforcement proceedings, and proposals for legislative change. Although "[s]ignificance in interpretation may be given to a consistent, long continued administrative application of an ambiguous statute," *Cleary* v. *Cardullo's Inc.,* 347 Mass. 337, 343 (1964), "[c]ourts are not bound by erroneous adminstrative constructions [if any] of a statute," *Johnson* v. *Martignetti,* 374 Mass. 784, 790 (1978). "The duty of statutory interpretation is for the courts." *Cleary, supra* at 344.

The Governor's remarks clearly indicate that non-fiduciaries, such as insurers, were to be included within the scope of the act. The Governor stated that the other major purpose of the act was to bring additional revenues to the treasury. All of the purposes he described are served by G. L. c. 200A, §§ 9, 10, 11, and 12, and by § 5, if the statute is read to include insurance companies and other nonfiduciaries. We cannot assume the Legislature ignored the Governor's request for broad legislation or limited the Governor's request in a statute passed shortly after his message, without expressing any limitations it imposed.

Further, the magnitude of abandoned contractual obligations is so large, we think it implausible that the Legislature intended to exclude them from the statute, permitting "chance enrichment of particular individuals or organizations," *Standard Oil Co.* v. *New Jersey,* 341 U.S. 428, 436 (1951), at the expense of the citizens of the Commonwealth. This is not consistent with the Legislature's intent that the Commonwealth benefit from abandoned property.

John Hancock also attempts to support its interpretation by examining the Uniform Disposition of Unclaimed Property Act (UDUPA), 8 U.L.A. 73-113 (1966). In § 9, the UDUPA defines that property subject to abandonment as "[a]ll intangible personal property, not otherwise covered by this Act . . . that is held or owing . . . in the ordinary course of the holder's business." Section 7 of the UDUPA, on the other hand, applies to "[a]ll intangible personal property . . . held in a fiduciary capacity for the benefit of another person." John Hancock points to the absence of the "held or owing" language of UDUPA § 9, from G. L. c. 200A, § 5, until it was amended by St. 1980, c. 130. John Hancock claims that by using "held by, or in the control of" language in G. L. c. 200A, § 5, the Legislature intended to limit the section to intangible personal property held in a fiduciary capacity, as in UDUPA § 7.

The short answer to this argument is that G. L. c. 200A, § 5, does not use the language "in a fiduciary capacity," which is so essential to the limiting character of UDUPA

§ 7. Additionally, G. L. c. 200A, § 5, is similar to UDUPA § 9, not UDUPA § 7. The Commissioners' Note to UDUPA § 9, 8 U.L.A. at 94, indicates that it applies to stocks, dividends, and money, all of which are expressly subject to G. L. c. 200A, § 5.[26]

Finally, John Hancock argues that the contractual obligations at issue are not "intangible personal property," or that it does not "hold" that property. John Hancock claims that the property is owned by the creditors or payees of its checks, and that it does not control that property. Relying on *Blue Cross* v. *Cory*, 120 Cal. App. 3d 723, 736 (1981),[27] which discusses the applicability of the California version of the abandoned property law to uncashed benefit and vendor checks issued by Blue Cross, the Treasurer claims that the uncashed checks are intangible personal property.

We conclude that contractual obligations are "intangible personal property," although the checks themselves are not,

---

[26] The original version of G.L. c. 200A was passed before the advent of the UDUPA, and therefore the absence of language used in the UDUPA is not relevant. When the Legislature amended § 5 in St. 1980, c. 130, it retained its coverage of "all intangible personal property," and specified that the "held or owing" language included "property held by any fiduciary." Thus, we believe that § 5 was always intended to apply to both fiduciaries and nonfiduciaries. Further, unlike the UDUPA, St. 1980, c. 130, does not contain two sections, one for fiduciaries and one for nonfiduciaries. If § 5 had been left alone and another section added along the lines of UDUPA § 9, we might be more inclined to agree with the defendant. But that is not this case.

[27] The *Blue Cross* case, *supra*, determined that the uncashed checks issued by Blue Cross did not fit within the definition of intangible personal property because the checks were not "intangible personal property," which under the statute could be "held or owing." Furthermore, no "proceeds" existed from the uncashed checks to turn over to the State. However, the court decided that the checks were written because the payee had a right to be paid. "This right was 'intangible personal property' in the form of a 'thing in action' (or 'chose in action'), which was transferrable by him as its 'owner.'" The court went on to state that the "thing in action" was the intangible personal property which must be paid to the State after seven years by the holder of that property. *Id.* at 735-736.

because that term encompasses the rights of a creditor. *Herman* v. *Connecticut Mut. Life Ins. Co.*, 218 Mass. 181, 185-186 (1914). See *Kane* v. *Insurance Co. of N. Am.*, 38 Pa. Commw. 42, 44 (1978). The debt is "owned" by the payee of the check, but it is "held" by John Hancock. The debt "is not property in the hands of the debtor; but it is an obligation of the debtor . . . and power over the debtor at his domicil is control of the ordinary means of enforcement." *Bliss* v. *Bliss*, 221 Mass. 201, 208 (1915). The Treasurer can only collect abandoned property by controlling those debtors or other holders. The focus of the statute is to reunite the owners with their property, and therefore it is irrelevant that John Hancock does not own the property. We conclude that G. L. c. 200A, § 5, applies to John Hancock.

In light of our conclusion that the Treasurer has standing, and that this case is not barred by any statute of limitations, we affirm those rulings of the trial court. We reverse the ruling that G. L. c. 200A, § 5, does not apply to John Hancock and remand the case to the Superior Court for entry of a partial summary judgment on the reported questions and for further proceedings.

*So ordered.*