REVENUE CABINET, Commonwealth
of Kentucky, Appellant,

v.

BLUE CROSS AND BLUE SHIELD OF
KENTUCKY, INC., a Kentucky
Corporation, Appellee.

Supreme Court of Kentucky.

Jan. 16, 1986.

Ross T. Carter, Revenue Cabinet, Frankfort, for appellant.

D. Paul Alagia, Peter F. Ervin, Louisville, for appellee.

LEIBSON, Justice.

The issue is whether certain uncashed checks, issued by Blue Cross and Blue Shield of Kentucky, Inc. ("BC/BS") in the ordinary course of business to pay subscriber benefits and premium refunds, represent liquidated debts which should be treated as intangible property subject to escheat under Kentucky's abandoned property laws, KRS Chapter 393.

The checks have been outstanding for seven years or more. They were written by BC/BS during the period July 1, 1959 through June 29, 1974, mailed to subscribers/payees to meet mandatory contractual obligations, but not negotiated.

The amounts in question total $125,-209.26, recorded in a register maintained by BC/BS which lists check numbers, dates, and amounts, as well as the subscriber's name. After the amounts represented by these checks had been outstanding for more than two years without hav-

ing been negotiated, BC/BS "journalized back" these amounts into "current operating accounts" and "unearned premium accounts." However, the amounts represented by these checks are now fixed and uncontestable because of time limitations in the policies,[1] and are recognized by BC/BS as continuing obligations for which BC/BS will issue a new check to the subscriber regardless of how much time has passed.

The checks for premium refunds due subscribers are paid by mathematical computation. The checks for subscriber benefits are in an amount stated by the policy or determined by referral to a schedule of usual, customary and reasonable fees which is described by the responsible BC/BS official as "no different" than a charge specified in the insurance contract. In either event, after the period of time specified in the policy, the policyholder has lost the alternative to negotiate.

Until 1966, BC/BS maintained the total amounts represented by such uncashed checks in an account designated "reserve for old outstanding checks." In 1966, BC/BS, relying on the advice of counsel, changed its accounting methods to charge these sums back to its accounts. In 1982, the Revenue Cabinet notified BC/BS that the funds represented by these uncashed subscriber benefits and premium refund checks were subject to escheat, and the Cabinet demanded these funds. BC/BS refused to comply, choosing instead to file the present action seeking a declaratory judgment to the contrary. Franklin Circuit Court granted summary judgment in favor of BC/BS. The Court of Appeals affirmed. We accepted discretionary review, and reverse.

The Cabinet contends that the checks fall within the scope of KRS 393.090, "Presumption of abandonment of intangible personal property not otherwise covered." KRS 393.090 states, in pertinent part:

"[A]ll intangible property, ... that is held or owing in this state by any person and has remained unclaimed by the own-

er for more than seven (7) years after it became payable or distributable is presumed abandoned."

If the amounts represented by these checks are liquidated debts and, as such, "intangible property" within the meaning of this section, they are subject to custodial escheat as provided in KRS Chapter 393, to be held by the state for the rightful owner and administered in conformity with that Chapter.

The Revenue Cabinet does not contend that the checks per se are property that escheats. They are only pieces of paper. But the Cabinet contends that the obligation to pay that is represented by the checks are a liquidated debt, and as such intangible property subject to escheat.

BC/BS contends that the checks were not evidence of liquidated debts but offers of settlement, and that BC/BS does not hold the property subject to escheat.

█ The definition of intangible property is broad enough to include a liquidated debt evidenced by a written instrument. *See* *Black's Law Dictionary*, 5th ed., p. 726. The issue turns on whether the amounts in question should be classified as a claim liquidated or unliquidated in amount.

█ The beginning point for analyzing whether the amounts stated in the BC/BS account is within the term "intangible property" as that term is used in KRS 393.090, is a comparison of the verbiage in KRS 393.090 and Section 2 (formerly Section 9) of the Uniform Unclaimed Property Act approved by the National Conference of Commissioners on Uniform State Laws, Vol. 8a, Uniform Laws Annotated ("ULA"). Comparing the two persuades us that, as the Cabinet contends, our Act is, in pertinent part, modeled after the Uniform Act. Turning to the Uniform Act, we find "intangible property" defined in Section 1(10) to include "checks" and "drafts," and also to include "amounts due and payable under the terms of insurance policies." Vol. 8A,

---

1. Some relatively few policies do not contain time limitations for contestability. But these would, of course, be subject to statutory limitations of actions.

ULA, p. 628, Uniformed Unclaimed Property Act, Sec. 1(10). It is evident that the checks need not be certified nor otherwise represent an amount already charged against the payor's bank account before qualifying within the term "intangible property." Obligations to pay are intangible property so long as the amount due is certain and liquidated.

The question of whether a check or draft issued by an insurance company should be considered a liquidated amount and property subject to escheat is covered by a comment to Section 2 (former Section 9) of the Uniform Act as follows:

> "A draft issued by a *property or casualty insurance company as an offer of settlement* of a claim for property damage or personal injury is not subject to the presumption of abandonment if the offer was not accepted by the payee. In this situation, the draft never became payable or distributable. The issue of whether a draft is accepted by a payee is a question of fact that is not addressed by the Act." (Emphasis added.)

■ The converse of the check issued by a "property or casualty" insurer as an offer of settlement of a claim of an unliquidated amount is a check issued by a life insurance company, a health insurance company, or a disability insurance company in payment of a *fixed or scheduled benefit,* an obligation not subject to negotiation. The amounts represented by the BC/BS account in question, when squared with the obligations of the policies underpinning their payment, compel the conclusion that these checks were not offers of settlement but payments of fixed obligations.

In any event, this case was disposed of on summary judgment. In the event that the conclusion appropriate from the general nature of the policies in question is not appropriate to any particular check, on remand BC/BS should offer evidence to overcome the prima facie case presented by the record.

A review of the cases cited by the Revenue Cabinet, when contrasted with the cases cited by BC/BS, points up the sharp distinction between the checks with which we are concerned and the "offer of settlement" situation.

Revenue Cabinet relies principally on three cases: *Blue Cross of Northern Cal. v. Corey,* 120 Cal.App.3d 723, 174 Cal.Rptr. 901 (1981); *Treas. and Rec. Gen. v. John Hancock Mut. Life,* 388 Mass. 410, 446 N.E.2d 1376 (1983); and *Louisiana Hospital Service, Inc. v. Collector of Rev.,* 293 So.2d 663 (La.App.1974). These cases involved uncashed checks mailed to policyholders in payment for benefits either identical or substantially similar to those involved in our case; checks mailed in payment of hospital, surgical and medical benefits, or accident and health benefits, or life insurance proceeds. The cases are squarely in point on the facts, and the courts involved held that the property escheats. One case, *Blue Cross of Northern Cal. v. Corey, supra,* is substantially identical in every respect to the present case. The court held that the amounts involved escheated to the state because they were owing in the ordinary course of business and had remained unclaimed by the owner for more than seven years after the amounts became payable.

BC/BS relies principally on three cases: *Kane v. Ins. Co. of North America,* 38 Pa.Cmwlth. 42, 392 A.2d 325 (1978); *Allstate Ins. Co. v. Eagerton,* 403 So.2d 172 (Ala.1981); and *Aetna Cas. & Sur. v. State Ex Rel. Eagerton,* 414 So.2d 455 (Ala.1982). These cases represent the situation involving property and casualty insurers. The checks or drafts involved specified that they were being offered "in satisfaction of _____," and provided at the place for endorsement that:

> "Endorsement hereof acknowledges that this payment is offered and received in full satisfaction of the claim shown on the other side; and that upon acceptance and payment of this draft the [insurer] is hereby released and discharged from said claim." *Aetna Cas. & Sur. v. State Ex Rel. Eagerton, supra* at 458.

The distinction between the types of payments represented by the checks in the

cases cited by Revenue Cabinet and those cited by BC/BS is readily apparent, fits squarely with the distinction made in the Uniform Act, and mandates our decision for Revenue Cabinet.

■ Further, we reject the appellee's arguments based on the Uniform Commercial Code. Revenue Cabinet does not seek to collect the checks, but rather to escheat the underlying obligations which the checks represent. The issue is not whether BC/BS is obliged to honor the checks per se after all the intervening years. The issue is whether BC/BS is obliged to honor the debt which the checks represent. BC/BS recognizes its continuing obligation to pay the amount stated in the check by maintaining the account in question and paying whenever the demand for payment is made. The policy obligations are plain from the record. The issue presented is not whether BC/BS has continuing obligation to pay, but whether it should be entitled to keep the money if no demand is ever made. It is, as Revenue Cabinet describes it, simply a question of whether there should be public escheat as provided in KRS Chapter 393 or private escheat as claimed by BC/BS. We hold that the fact situation presented is covered by the public escheat system.

The decision of the Court of Appeals is reversed and the summary judgment in favor of BC/BS is vacated. The action is remanded to the trial court to proceed in conformity with this opinion.

STEPHENS, C.J., and GANT, LEIBSON and VANCE, JJ., concur.

STEPHENSON, J., dissents by separate opinion in which AKER and WINTERSHEIMER, JJ., join.

STEPHENSON, Justice, dissenting.

The majority opinion is not logical; rather, it is result oriented. The Revenue Cabinet does not contend that the checks are *property* that would escheat. With this concession, it cannot be logically argued that the bank account is owned or is the property of the payee on the check. Blue

Cross and Blue Shield alone has authority over the bank account; it properly can draw on it or shift it around. Blue Cross and Blue Shield can legally spend it. These rights are not consistent with the conclusion by the majority that the sums represented by the checks are a liquidated debt.

The bank account is the property of Blue Cross and Blue Shield, subject perhaps to possibility of a claim on the account. The bank account is not *owned* by payees on the checks and thus is not property unclaimed by the owner, as provided for in the escheat statute.

Accordingly, I dissent.

AKER and WINTERSHEIMER, JJ., join in this dissent.